**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**GULFSTREAM OWNER, LLC**,

Plaintiff,

v. **CIVIL CASE NO.: 9:26-cv-81183**

**HOGAN BROTHERS CONSTRUCTION INTERNATIONAL CORP**.,

Defendant.

______________________________________/

**COMPLAINT**

COMES NOW, Plaintiff, GULFSTREAM OWNER, LLC ("Gulfstream"), by and through its undersigned counsel, and hereby sues Defendant, HOGAN BROTHERS CONSTRUCTION INTERNATIONAL CORP. ("Hogan"), and alleges as follows:

**NATURE OF ACTION AND RELIEF SOUGHT**

1. This is an action for damages that exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest, costs, and attorneys' fees by Plaintiff, the owner of the Gulfstream Hotel, to recover the damages caused by Defendant, its general contractor, for Defendant's willful abandonment and improper termination of a multi-million-dollar historic renovation, and to invalidate the fraudulent construction lien the general contractor recorded against the property on its way out the door.

2. Gulfstream hired Hogan to renovate and expand the Gulfstream Hotel in Lake Worth Beach, and during all material times had (and continues to) hold its end of the bargain, funding and paying every single one of Hogan's payment applications for over a year. Hogan did not.

3. In or about June of 2026, Hogan walked off the job with the project unfinished, left Gulfstream's subcontractors unpaid with certain subcontractor liens standing against the property, and improperly demanded payment on inflated applications billing for work it had never performed.

4. Rather than complete the job or account for the money it had already been paid, Hogan decided to instead record a fraudulent $1,710,879.93 claim of lien against the Gulfstream Hotel. Not surprisingly, that figure exceeds even the disputed payment applications and is grossly padded with amounts Hogan never earned.

5. Through this action, Gulfstream seeks redress for Hogan's breaches of contract, a judicial declaration that Hogan's claim of lien is fraudulent and unenforceable, and damages, interest, attorneys' fees, and costs to which Gulfstream is entitled.

**PARTIES, JURISDICTION, AND VENUE**

6. Plaintiff Gulfstream is a limited liability company organized under the laws of the State of Delaware and registered to transact business in Florida. For purposes of diversity jurisdiction, each of Gulfstream's members is a citizen of a state other than Florida, and Gulfstream is therefore not a citizen of Florida.

7. Plaintiff Gulfstream owns the real property at issue in Palm Beach County, Florida, located at 1 Lake Avenue, Lake Worth Beach, Florida 33460 (the "Property") on which the construction renovation project at issue was performed, and is the current owner under the construction contract described below, having been assigned and having assumed that contract by the original signatory, Restoration St. Louis, Inc.

8. Defendant Hogan is a corporation organized under the laws of the State of Florida and is therefore a citizen of the State of Florida. Hogan conducts substantial and not isolated

business in Palm Beach County, Florida, and served as the general contractor on the project described herein.

9. This Court has original subject-matter jurisdiction over this action under 28 U.S.C. §1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds seventy-five thousand ($75,000.00), exclusive of interest and costs. Among other things, liquidated damages exceed the threshold, the Claim of Lien Hogan recorded against the Property asserts an unpaid amount of $1,710,879.93, and the payment applications at issue amount to $1,313,299.85.

10. Venue is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and the Property at issue is situated in this District. The Project and the Property are located in Palm Beach County, Florida.

11. This forum is also consistent with the parties' written agreements at issue, which are governed by and construed in accordance with the substantive laws of the State of Florida and provide that claims are to be resolved in a court of competent jurisdiction in the State of Florida.

12. All conditions precedent to the bringing of this action have occurred, have been performed, or have been waived or excused.

13. Gulfstream has retained the undersigned counsel, Sandberg Phoenix & von Gontard, P.C., to represent its interests in this action. Gulfstream is obligated to pay the undersigned counsel reasonable attorneys' fees and to reimburse costs and expenses incident to this litigation.

## GENERAL ALLEGATIONS

14. On or about February 2, 2024, Restoration St. Louis, Inc. ("RSL"), as then owner, and Hogan, as general contractor, entered into a Standard Form Agreement Between Owner and Contractor (AIA Document A102-2017) (the "A102"), together with the General Conditions of the Contract for Construction (AIA Document A201-2017) (the "A201"), attached hereto, less exhibits and other certain contract documents made a part thereof, and incorporated herein by reference as a composite, **Exhibit A** (collectively, the "Contract"), for the renovation of the Gulfstream Historic Hotel on the Property (the "Project").

15. The Contract established a guaranteed maximum price "not to exceed Twenty-Two Million Nine Hundred Twenty-Five Thousand Dollars and no/100 ($22,925,000.00)[.]" (A102 at §5.2.)

16. The Contract is governed by, and is to be construed and interpreted in accordance with, the substantive laws of the State of Florida. (A102 at §13.3.)

17. In or about March of 2024, the Contract was assigned to and assumed by Gulfstream from RSL, who thereby became the owner under the Contract, with all rights and remedies of the owner as fully described therein.

18. Gulfstream performed all of its material obligations under the Contract, including funding and paying Hogan's payment applications through and including payment No. 25.

19. Under the Contract, each application for payment was required to be submitted to and certified by the record architect and approved by the owner before payment became due (see, .e.g., A201 at §9.4.2), and Hogan was required, among other things, to perform the work diligently and to continue performance during the pendency of any dispute or claim (A201 at §15.1.4), to bill only for work actually performed and materials actually furnished (A102 at

§12.1.6), and to promptly pay and discharge subcontractor and supplier claims and liens for amounts the owner had funded (A201 at §9.3.1.3).

20. Unfortunately, on or about June 12, 2026, Hogan stopped and abandoned the work on the Project (by its own account) without any contractual basis and refused to remobilize, notwithstanding its continuing obligation to perform under the Contract. In fact, Hogan's own site labor had ended May 31 on its own payroll registers, its scaffolding was removed on or about July 28, 2026, and, on August 3, 2026, a two-man crew emptied the construction trailer of tools and supplies.

21. Hogan submitted payment application No. 26 in the amount of $659,310.31, and payment application No. 27 in the amount of $653,989.54, which remained incomplete, unrevised, uncertified by the Record Architect, and unapproved by Gulfstream (which it properly disputed in writing).

22. Gulfstream's field verification also established that Hogan had materially overbilled, identifying $536,477.95 in field-verified overbilling on payment application No. 26 alone.

23. Despite Gulfstream's funding of the corresponding payment draws, Hogan failed to pay its subcontractors and suppliers and failed to discharge or transfer to bond construction liens recorded against the Property by its subcontractors, in violation of its express obligations to do so under the Contract.

24. Tellingly, on or about September 4, 2026, citing A201 §14.1.1 and §14.1.3, Hogan served a purported seven-day Notice of Intent to Terminate the Contract, and therein wrongly asserted a thirty-day work stoppage through no fault of Hogan, when in truth Hogan had unilaterally stopped and abandoned the work without any contractual basis months earlier.

25. As a direct and proximate result of Hogan's conduct, Gulfstream has been damaged, including by incurring costs to complete and correct Hogan's work, delay-related damages, amounts required to address unpaid subcontractors and their liens, and other losses.

**COUNT I—BREACH OF CONTRACT**

26. Gulfstream realleges and incorporates paragraphs one (1) through twenty-five (25) above as though fully set forth herein.

27. The Contract is a valid and enforceable written agreement between Gulfstream and Hogan.

28. Hogan materially breached the Contract, including by:

a. Stopping and abandoning its work under the Contract on or about June 12, 2026, without any contractual basis for doing so;

b. Continuing to refuse to remobilize or to continue its performance under the Contract after having abandoned its work on the Project;

c. Failing to perform its work under the Contract diligently and achieve the required progress and completion of the Project;

d. Submitting applications for payment that overstated the percentage of work performed;

e. Submitting applications for payment for work not performed as claimed;

f. Double-billing line items;

g. Misclassifying stored materials;

h. Improperly storing materials, including without limitation wallpaper;

i. Failing to properly account for materials already paid for by Gulfstream;

j. Improperly expressly or implicitly and/or constructively terminating the Contract without cause; and

k. Otherwise failing to perform its obligations under the Contract.

29. As a direct and proximate result of Hogan's material breaches, Gulfstream has suffered damages in an amount to be determined at trial in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees, specifically including but not limited to the cost to complete and correct Hogan's work, delay damages which include liquidated damages pursuant to Section 5.1.6 of the A102, sums necessary to discharge subcontractor liens Gulfstream had already funded, and other damages, together with prejudgment interest.

30. Gulfstream is entitled to recover its attorneys' fees and costs under the Contract and applicable Florida.

**WHEREFORE,** Gulfstream respectfully requests this Court enter judgment in its favor and against Defendant Hogan on Count I of its Complaint for damages, together with prejudgment and post-judgment interest, attorneys' fees, costs, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II—BREACH OF THE CONSTRUCTION DISBURSING AND ESCROW AGREEMENT

31. Gulfstream realleges and incorporates paragraphs one (1) through twenty-five (25) above as though fully set forth herein.

32. On or about March 25, 2024, First American Title Insurance Company, in its capacity as disbursing agent, Hogan, as general contractor, South Florida Financing II, LLC, as the lender, PACE Equity, LLC, as a lender, The Bank of Missouri, as the bridge lender, Gulfstream, as the owner, Checkmate Design LLC, as architect, and First American Title Insurance Company, as the title company, all entered into a Construction Disbursing and Escrow Agreement, a true and

correct copy of which is attached hereto and incorporated herein as **Exhibit B** (the "Disbursing Agreement").

33. The Disbursing Agreement is a valid and enforceable written agreement to which Gulfstream and Hogan are parties.

34. Under the Disbursing Agreement, Hogan is ultimately responsible for assuring that its subcontractors are paid for all materials and services incorporated into the Project to the extent funds have been disbursed and, upon written notice of a subcontractors' mechanic's lien, Hogan is required to "within twenty (20) days of General Contractor's receipt of such written notice … either (a) cause the lien to be discharged and removed of record, or (b) so long as Construction Lender is reasonably satisfied that is [sic] security interest are not in jeopardy and the Project is not subject to risk of foreclosure of such lien, provide the Disbursing Agent with a bond in an amount sufficient to protect the interests" of the owner and other protected parties. (Disbursing Agreement at §1(E).)

35. Gulfstream performed its material obligations under the Disbursing Agreement, including funding the disbursements for the work.

36. Hogan materially breached the Disbursing Agreement by, among other things, failing to pay its subcontractors from the funds disbursed for their work and by failing, within twenty (20) days of notice, to discharge or bond the construction liens recorded against the Property by its subcontractors.

37. As a direct and proximate result of Hogan's material breaches, Gulfstream has suffered damages in an amount to be determined at trial in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees, specifically including but not limited to the cost to complete

and correct Hogan's work, delay damages, sums necessary to discharge subcontractor liens Gulfstream had already funded, and other damages, together with prejudgment interest.

38. Gulfstream is entitled to recover its attorneys' fees and costs under the Disbursement Agreement and applicable Florida.

**WHEREFORE,** Gulfstream respectfully requests this Court enter judgment in its favor and against Defendant Hogan on Count II of its Complaint for damages, together with prejudgment and post-judgment interest, attorneys' fees, costs, and for such other and further relief as the Court deems just and proper under the circumstances.

**COUNT III—FRAUDULENT LIEN (§713.31, Fla. Stat.)**

39. Gulfstream realleges and incorporates paragraphs one (1) through twenty-five (25) above as though fully set forth herein.

40. This is an action pursuant to Section 713.31, Florida Statutes, by an owner against whose interest in real property a fraudulent lien has been filed.

41. On or about September 10, 2026, Hogan recorded a Claim of Lien against the Property in the Public Records of Palm Beach County, Florida (CFN 20260332416), Official Records Book 36785, Pages 1462-1464, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit C** (the "Claim of Lien").

42. In the Claim of Lien, Hogan, as lienor, claims an unpaid amount of $1,710,879.93, plus interest, legal fees, and collection costs, for labor, services, and materials allegedly furnished to the Property between April 22, 2024, and June 12, 2026.

43. However, the amount actually due to Hogan (if any), is far less than the $1,710,879.93 so claimed. The only payment applications which remained unpaid when the Claim of Lien was recorded included No. 26 (for $659,310.31) and No. 27 (for $653,989.54). The two

of which together total $1,313,299.85—which is $397,580.08 less than the amount Hogan claimed as unpaid, and even those two applications themselves are overstated, uncertified, unapproved, and clearly disputed.

44. Hogan willfully exaggerated the amount of the Claim of Lien and/or compiled its claim with such willful and gross negligence as to amount to a willful exaggeration, including by:

a. Claiming as unpaid amounts materially exceeding any amount actually due;

b. Billing for work not performed as claimed;

c. Asserting completion percentages far in excess of the work actually performed;

d. Double billing; and

e. and misclassifying stored materials (as established by Gulfstream's field verification).

45. The exaggeration and inclusion of non-lienable and unearned amounts in the Claim of Lien were not the result of minor mistake or error, or of good-faith dispute as to the amount due.

46. The Claim of Lien is therefore fraudulent under Section 713.31, Florida Statutes, and is unenforceable. As such, Hogan has forfeited any right to a lien on the Property.

47. Gulfstream, as the owner against whose interest the Claim of Lien was filed, has a right of action for the damages caused by the filing of the fraudulent Claim of Lien, together with court costs, clerk's fees, reasonable attorneys' fees, and costs incurred in securing the discharge of the lien, along with "punitive damages in an amount not exceeding the difference between the amount claimed by the lienor to be due or to become due and the amount actually due or to become due" upon a motion for such punitive damages.

**WHEREFORE,** Gulfstream demands judgment against Defendant Hogan: (a) declaring the Claim of Lien to be a fraudulent lien that is unenforceable, and declaring that Hogan has forfeited any lien on the Property; (b) awarding Gulfstream its actual damages, court costs, clerk's fees, the amount of any bond premium, interest on any money deposited to discharge the lien, and reasonable attorneys' fees and costs incurred in securing the discharge of the Claim of Lien, and (c) granting such other and further relief as the Court deems just and proper under the circumstances.

**Dated this 17th day of September 2026.**

**SANDBERG, PHOENIX & VON GONTARD P.C.**

By: */s/ Richard B. Maltby* ________
Richard B. Maltby, Esq. FL Bar No. 123602
David N. Muñiz, Esq., FL Bar No. 1033023
13900 Tech City Circle, Suite 415
Alachua, FL 32615
Telephone: (352) 260-0128;
Facsimile: (314)241-7604
rmaltby@sandbergphoenix.com
dmuniz@sandbergphoenix.com

*Attorneys for Plaintiff, Gulfstream Owner, LLC*