# AIA® Document A102® – 2017

## *Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*

**AGREEMENT** made as of the day of February 2 in the year 2024
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

Restoration St. Louis, Inc
4240 Manchester Ave.
St. Louis, MO 63110
Attn: Amrit Gill at amrit@restorationstl.com

and the Contractor:
*(Name, legal status, address and other information)*

Hogan Brothers construction International Corp.
18851 NE 29th Avenue, Suite 413
Aventura, FL 33180
Attn: Matthew Hogan at matthewh@hoganbrothers.net

for the following Project:
*(Name, location and detailed description)*

Renovation and Addition of the Gulfstream Historic Hotel located at 1 Lake Avenue, Lake Worth Beach, Florida

The Architect:
*(Name, legal status, address and other information)*

Checkmate Design, L.L.C.
4240 Manchester Ave.
St. Louis, MO 63110
Attn: Amy Gill at amy@checkmatedesign.com

Record Architect: Beilinson Gomez Architects PA.
8101 Biscayne Blvd. S #309
Miami, FL, 33138

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

The parties should complete A102™–2017, Exhibit A, Insurance and Bonds, contemporaneously with this Agreement. AIA Document A201™–2017, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

EXHIBIT
A

Init.
MH

AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

(1462982997)

TABLE OF ARTICLES


1 THE CONTRACT DOCUMENTS

2 THE WORK OF THIS CONTRACT

3 RELATIONSHIP OF THE PARTIES

4 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

5 CONTRACT SUM

6 CHANGES IN THE WORK

7 COSTS TO BE REIMBURSED

8 COSTS NOT TO BE REIMBURSED

9 DISCOUNTS, REBATES AND REFUNDS

10 SUBCONTRACTS AND OTHER AGREEMENTS

11 ACCOUNTING RECORDS

12 PAYMENTS

13 DISPUTE RESOLUTION

14 TERMINATION OR SUSPENSION

15 MISCELLANEOUS PROVISIONS

16 ENUMERATION OF CONTRACT DOCUMENTS

EXHIBIT A INSURANCE AND BONDS


**ARTICLE 1 THE CONTRACT DOCUMENTS**

The Contract Documents consist of this Agreement, the General Conditions of the Contract (Drawings, Specifications, Addenda issued prior to execution of this Agreement, all Exhibits to this Agreement (and the documents referenced therein), other documents listed in this Agreement and in the General Conditions of the Contract, and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. A Modification is a written amendment to the Contract signed by both parties, a Change Order, an Owner Construction Change Directive, or a written order issued by the Architect and agreed to by Contractor (not to be unreasonably withheld) for a minor change in the Work. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern. An enumeration of the Contract Documents, other than a Modification, appears in Article 16.

In the event of a conflict between the Contract Documents, the following order of precedence shall apply:

.1 Agreement (AIA Document A102-2017, as modified)
.2 Contractors Qualifications & Clarifications
.3 Amendments or Addenda to the Contract Documents
.4 Plans and Drawings per Contract Documents
.5 Specifications per Contract Documents

Init.

ML V

AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1462982997)

.6 and the balance of the Exhibits in order of priority from greater detail to lesser detail.

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others. The Work includes all labor, materials and equipment as set forth in the Contract Documents listed in Article 16 below and includes delivery, storage, handling and installation of all material and equipment.

## ARTICLE 3 RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**§ 4.1** The date of commencement of the Work shall be:
*(Check one of the following boxes.)*

[ ] The date of this Agreement.

[ ] A date set forth in a notice to proceed issued by the Owner.

[ X ] Established as follows:
*(Insert a date or a means to determine the date of commencement of the Work.)*

1. Contractor receives Notice to Proceed from the Owner.
2. Contractor receives Recorded Notice of Commencement from the Owner.
3. Contractor receives the Demolition Permit from the City of Lake Worth required for the Work (the parties agree that the Building Permit from the City of Lake Worth Beach to follow within 60 days or Contractor will be entitled to extension of Contract Time to the extent such delay impedes construction schedule) .
4. Contractor receives this fully executed Agreement from Owner & Mobilization Deposits.
5. All existing electrical line relocations that affect the Work are completed by the Owner (the parties confirm that all other Utility Overhead & Underground Line Relocations will be performed during construction pursuant to the construction schedule) .

**§ 4.2** The Contract Time shall be measured from the date of commencement of the Work.

### § 4.3 Substantial Completion

**§ 4.3.1** Subject to adjustments of the Contract Time as provided in the Contract Documents, the Contractor shall achieve Substantial Completion of the entire Work:
*(Check one of the following boxes and complete the necessary information.)*

[ X ] Not later than Three Hundred Ninety-Five 395calendar days from the date of commencement of the Work.

[ ] By the following date:

Init.
MH

AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:33:22 ET on 02/12/2024 under Order No.1141479565 which expires on 03/06/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (928278610)

**§ 4.3.2** Subject to adjustments of the Contract Time as provided in the Contract Documents, if portions of the Work are to be completed prior to Substantial Completion of the entire Work, the Contractor shall achieve Substantial Completion of such portions by the following dates:

| Portion of Work | Substantial Completion Date |
| --- | --- |

**§ 4.3.3** If the Contractor fails to achieve Substantial Completion as provided in this Section 4.3, liquidated damages, if any, shall be assessed as set forth in Section 5.1.6.

## ARTICLE 5 CONTRACT SUM

**§ 5.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

**§ 5.1.1** The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work, or other provision for determining the Contractor's Fee.)*

The Contractor's Fee is five percent (5% ) of the Cost of the Work.

**§ 5.1.2** The method of adjustment of the Contractor's Fee for changes in the Work:

Five Percent (5%) of the Cost of the Work.

**§ 5.1.3** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

Fifteen Percent (15%() of the Cost of the Work.

**§ 5.1.4** Rental rates for Contractor-owned equipment shall not exceed one hundred percent ( 100 %) of the standard rental rate paid at the place of the Project.

**§ 5.1.5** Unit prices, if any:
*(Identify the item and state the unit price and quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
| --- | --- | --- |

**§ 5.1.6** Liquidated damages, if any:
*(Insert terms and conditions for liquidated damages, if any.)*

The parties acknowledge that it is extremely difficult to ascertain with accuracy at the time of execution of this Agreement the extent of the actual damages that the Owner would suffer as a result of any delay in achieving the dates of Substantial Completion of Portions of the Work and the entire Work, as such dates may be adjusted in accordance with the provisions of this Agreement. Therefore, in the event the Contractor does not achieve Substantial Completion of Portions of the Work and the entire Work by the date required herein, as such dates may be extended pursuant to the provisions of the Contract Documents (the "Substantial Completion Date"), the Contractor shall pay the Owner, as liquidated damages and not as a penalty, the following amounts for each day the actual date of Substantial Completion of the entire Work exceeds the Substantial Completion Date for the entire Work, as such date may be adjusted pursuant to the terms of the Contract Documents. Such liquidated damages are hereby agreed to be a reasonable pre-estimate of damages the Owner will incur as a result of a delay in Substantial Completion of the entire Work due to the fault of the Contractor. Such liquidated damages shall be in lieu of any and all other damages for delay in achieving Substantial Completion of the entire Work; provided, however, the Owner's right to recover liquidated damages shall in no way limit (a) the Owner's entitlement to damages for any other injury, damage or loss, other than for delay, or (b) other non-damage remedies (e.g., the right to terminate the Contract) to which Owner may be entitled pursuant to the terms of this Contract or applicable law.

Liquidated Damages:
(1) $0 per day for the first 60 days of delay that Contractor fails to achieve Substantial Completion of the entire Work by the by the Substantial Completion Date;



AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

(2) $500 per day for each of the 61st through 91st day of delay that Contractor fails to achieve Substantial Completion of the entire Work by the by the Substantial Completion Date; and

(3) $1,000 per day thereafter for each day of delay that Contractor fails to achieve Substantial Completion of the entire Work by the by the Substantial Completion Date.

**§ 5.1.7** Other:
*(Insert provisions for bonus, cost savings or other incentives, if any, that might result in a change to the Contract Sum.)*

Upon final completion of the Work, if the Contract Sum is less than the Guaranteed Maximum Price, including approved Change Orders, the difference shall be considered the "Savings." The Savings shall include any remaining Contingency funds. The Savings shall be split as follows: sixty percent (60%) of the Savings will go to the Owner and forty percent (40%) of the Savings will go to the Contractor. The Owner shall pay the Contractor's share of the Savings as additional compensation promptly after Final Completion of the Project.

**§ 5.2 Guaranteed Maximum Price**
**§ 5.2.1** The Contract Sum is guaranteed by the Contractor not to exceed Twenty-Two Million Nine Hundred Twenty-Five Thousand Dollars and no/100 ($ 22,925,000.00 ), subject to additions and deductions by Change Order as provided in the Contract Documents. This maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.

**§ 5.2.2 Alternates**
**§ 5.2.2.1** Alternates, if any, included in the Guaranteed Maximum Price:

*(Table deleted)*
See Exhibit "A" (Contractors Qualifications & Clarifications) attached hereto.

**§ 5.2.2.2** Subject to the conditions noted below, the following alternates are accepted by the Owner following execution of this Agreement.
*(Insert below each alternate and the conditions that must be met for the Owner to accept the alternate.)*

See Exhibit "A" (Contractors Qualifications & Clarifications) attached hereto.

*(Table deleted)*
**§ 5.2.3** Allowances, if any, included in the Guaranteed Maximum Price:
*(Identify each allowance.)*

See Exhibit "A" (Contractors Qualifications & Clarifications) attached hereto.

**§ 5.2.4** Assumptions, if any, upon which the Guaranteed Maximum Price is based:
*(Identify each assumption.)*

See Exhibit "A" (Contractors Qualifications & Clarifications) attached hereto.

**§ 5.2.5** To the extent that the Contract Documents are anticipated to require further development, the Guaranteed Maximum Price includes the costs attributable to such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.


AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1462982997)

§ 5.2.6 The Owner shall authorize preparation of revisions to the Contract Documents that incorporate the agreed-upon assumptions contained in Section 5.2.4. The Owner shall promptly furnish such revised Contract Documents to the Contractor. The Contractor shall notify the Owner and Architect of any inconsistencies between the agreed-upon assumptions contained in Section 5.2.4 and the revised Contract Documents.

§ 5.2.7 The Contractor shall work with the Owner to assess the various options available to reduce the costs included in the Guaranteed Maximum Price throughout the construction of the Work.

§ 5.2.8 The Cost of the Work portion of the Guaranteed Maximum Price contains a line item entitled "General Conditions Costs." A breakdown of the items comprising General Conditions Costs, and the dollar value of each item and the maximum General Conditions Costs are set forth in Exhibit "D".
General Conditions & Requirements are a Fixed Sum in the amount of $880,000.00 and will be submitted in each Application for Payment in equal amounts throughout the project. General Conditions & Requirements are a Fixed Sum not to exceed $880,000.00. If Contractors General Conditions & Requirements are less than the not to exceed number, then Contractor receives 100% of the savings. If the Contractors General Conditions & Requirements are more than the not to exceed number at fault of Contractor, then Contractor is responsible for 100% of those costs. General Conditions & Requirements are a Fixed Sum and are not subject to submission of backup or audit.

§ 5.2.9 After completion of the buyout of subcontracts, suppliers, and other agreement necessary to complete the Work, the Contractor shall include a line item in the Schedule of Values entitled "Contingency". It is understood that the Contingency line item is to cover costs and expenses of the Contractor incurred as a result of pricing becoming more certain, or unforeseen or unanticipated events or circumstances; provided, however, any such cost or expense must otherwise be reimbursable as a Cost of the Work and cannot be used for General Conditions Costs (except as provided otherwise below). The Contractor may transfer amounts from the Contingency to other line items (other than line items for Contractor's Fee) for permitted uses with the prior written consent of the Owner, so long as the extent the Contractor has provided the Owner with evidence that any such adjustments and increased costs are reasonably necessary. At the sole discretion of the Owner, which shall not be unreasonably withheld, the Contractor may transfer amounts from the Contingency to the General Conditions Costs line item. Contingency will not be applied for additional General Conditions costs that Contractor is entitled to for extensions to the Contract Time due to excusable delay.

## ARTICLE 6 CHANGES IN THE WORK

§ 6.1 Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Article 7 of AIA Document A201™–2017, General Conditions of the Contract for Construction.

§ 6.2 Adjustments to subcontracts awarded on the basis of a stipulated sum shall be determined in accordance with Article 7 of A201–2017, as they refer to "cost" and "fee," and not by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior written consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 6.3 In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in Article 7 of AIA Document A201–2017 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the term "fee" shall mean the Contractor's Fee as defined in Section 5.1.1 of this Agreement.

§ 6.4 If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7 COSTS TO BE REIMBURSED

### § 7.1 Cost of the Work

§ 7.1.1 The term Cost of the Work shall mean actual costs necessarily incurred by the Contractor in the proper performance of the Work. The Cost of the Work shall include only the items set forth in this Article 7.

**§ 7.1.2** Where, pursuant to the Contract Documents, any cost is subject to the Owner's prior approval, the Contractor shall obtain such approval in writing prior to incurring the cost.

*(Paragraph deleted)*

**§ 7.2 Labor Costs**

**§ 7.2.1** Wages or salaries of construction workers directly employed by the Contractor to perform the construction of the Work at the site. or, with the Owner's prior approval, at off-site workshops

**§ 7.2.2** Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at the site and performing Work, as outlined in Exhibit "D" (General Conditions Costs Breakdown) attached hereto.

**§ 7.2.2.1** Wages or salaries of the Contractor's supervisory and administrative personnel when performing Work and stationed at a location other than the site as outlined in Exhibit "D" (General Conditions Costs Breakdown) attached hereto and limited to the personnellisted below:
*(Identify the personnel, type of activity and, if applicable, any agreed upon percentage of time to be devoted to the Work.)*

Project Manager & Project Engineer

**§ 7.2.3** Wages or salaries of the Contractor's supervisory or administrative personnel engaged at factories, workshops or while traveling, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

**§ 7.2.4** Costs paid or incurred by the Contractor, as required by law or collective bargaining agreements, for taxes, insurance, contributions, assessments, and benefits and, for personnel not covered by collective bargaining agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

**§ 7.2.5** If agreed rates for labor costs, in lieu of actual costs, are provided in this Agreement, the rates shall remain unchanged throughout the duration of this Agreement, unless the parties execute a Modification regarding those rates.

**§ 7.3 Subcontract Costs**

Payments made by or due from the Contractor to Subcontractors in accordance with the requirements of this Agreement and the subcontracts properly entered into under this Agreement in connection with Work properly performed. Items of Work that are General Conditions Costs (whether or not specifically listed in Exhibit "D") shall not be included in any subcontract without the prior written approval of the Owner, in its sole discretion.

**§ 7.4 Costs of Materials and Equipment Incorporated in the Completed Construction**

**§ 7.4.1** Costs, including transportation and storage at the site, of materials and equipment incorporated, or to be incorporated, in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

**§ 7.5 Costs of Other Materials and Equipment, Temporary Facilities and Related Items**

**§ 7.5.1** Costs of transportation, storage, installation, dismantling, maintenance, and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment, and tools, that are not fully consumed, shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Contractor shall mean fair market value.



AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1462982997)

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Contractor at the site, and the costs of transportation, installation, dismantling, minor repairs, and removal of such temporary facilities, machinery, equipment, and hand tools. Rates and quantities of equipment owned by the Contractor, or a related party as defined in Section 7.8, shall be subject to the Owner's prior written approval. The total rental cost of any such equipment may not exceed the purchase price of any comparable item on the date that the equipment is first rented for the Project. The Contractor shall pay any excess rental charges.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of the Contractor's site office, including general office equipment and supplies.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's and lender(s) (whether one or more lender, collectively "Lender" prior approval

**§ 7.6 Miscellaneous Costs**

**§ 7.6.1** Premiums for that portion of insurance required by the Contract Documents that can be directly attributed to this Contract.

**§ 7.6.1.1** Costs for self-insurance, for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.

**§ 7.6.1.2** Costs for insurance through a captive insurer owned or controlled by the Contractor, with the Owner's prior approval.

**§ 7.6.2** Sales, use, or similar taxes, imposed by a governmental authority, that are related to the Work and for which the Contractor is liable.

**§ 7.6.3** Fees and assessments for the building permit, and for other permits, licenses, and inspections, for which the Contractor is required by the Contract Documents to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents; except those related to defective or nonconforming Work for which reimbursement is excluded under Article 13 of AIA Document A201–2017 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process, or product, required by the Contract Documents.

**§ 7.6.5.1** The cost of defending suits or claims for infringement of patent rights arising from requirements of the Contract Documents, payments made in accordance with legal judgments against the Contractor resulting from such suits or claims, and payments of settlements made with the Owner's consent, unless the Contractor had reason to believe that the required design, process or product was an infringement of a copyright or a patent, and the Contractor failed to promptly furnish such information to the Record Architect as required by Article 3 of AIA Document A201–2017. The costs of legal defenses, judgments, and settlements, shall not be included in the Cost of the Work used to calculate the Contractor's Fee or subject to the Guaranteed Maximum Price.

**§ 7.6.6** Costs for communications services, electronic equipment, and software, directly related to the Work and located at the site.

**§ 7.6.7** Costs of document reproductions and delivery charges.

**§ 7.6.8** Deposits lost for causes other than the Contractor's, Subcontractor's, or anyone for whom they are responsible negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 7.6.9** [Not Used.]



AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1462982997)

**§ 7.6.10** [Not Used.]

**§ 7.6.11** That portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

**§ 7.7 Other Costs and Emergencies**
**§ 7.7.1** Other costs incurred in the performance of the Work, with the Owner's prior written approval.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury, or loss, in case of an emergency affecting the safety of persons and property, as provided in Article 10 of AIA Document A201–2017.

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors, or suppliers, provided that such damaged or nonconforming Work was not caused by the negligence of, or failure to fulfill a specific responsibility by, the Contractor, and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, Subcontractors, suppliers, or others.

**§ 7.8 Related Party Transactions**
**§ 7.8.1** For purposes of this Section 7.8, the term "related party" shall mean (1) a parent, subsidiary, affiliate, or other entity having common ownership of, or sharing common management with, the Contractor; (2) any entity in which any stockholder in, or management employee of, the Contractor holds an equity interest in excess of ten percent in the aggregate; (3) any entity which has the right to control the business or affairs of the Contractor; or (4) any person, or any member of the immediate family of any person, who has the right to control the business or affairs of the Contractor.

**§ 7.8.2** If any of the costs to be reimbursed arise from a transaction between the Contractor and a related party, the Contractor shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction in writing, then the cost incurred shall be included as a cost to be reimbursed, and the Contractor shall procure the Work, equipment, goods, or service, from the related party, as a Subcontractor, according to the terms of Article 10. If the Owner fails to authorize the transaction in writing, the Contractor shall procure the Work, equipment, goods, or service from some person or entity other than a related party according to the terms of Article 10.

## ARTICLE 8 COSTS NOT TO BE REIMBURSED

**§ 8.1** The Cost of the Work shall not include the items listed below:

**.1** Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Section 7.2, or as may be provided in Article 15;

**.2** Bonuses, profit sharing, incentive compensation, and any other discretionary payments, paid to anyone hired by the Contractor or paid to any Subcontractor or vendor, unless the Owner has provided prior approval;

**.3** Expenses of the Contractor's principal office and offices other than the site office;

**.4** Overhead and general expenses, except as may be expressly included in Article 7;

**.5** The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work;

**.6** Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence of, or failure to fulfill a specific responsibility of the Contract by, the Contractor, Subcontractors, and suppliers, or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable or costs for the correction of damaged, defective or non-conforming Work, disposal and replacement of materials and equipment incorrectly ordered or supplied, costs for any tests or inspections required, and costs incurred in making good damage to property not forming part of the Work;

**.7** Any cost not specifically and expressly described in Article 7; and

**.8** Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.


AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:
(1462982997)

## ARTICLE 9 DISCOUNTS, REBATES AND REFUNDS

**§ 9.1** Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included the amount to be paid, less such discount, in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds, and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be obtained.

**§ 9.2** Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 10 SUBCONTRACTS AND OTHER AGREEMENTS

**§ 10.1** Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or other appropriate written agreements with the Contractor. The Owner may designate specific persons from whom, or entities from which, the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors, and from suppliers of materials or equipment fabricated especially for the Work, who are qualified to perform that portion of the Work in accordance with the requirements of the Contract Documents. The Contractor shall deliver such bids to the Architect and Owner with an indication as to which bids the Contractor intends to accept. The Owner then has the right to review the Contractor's list of proposed subcontractors and suppliers in consultation with the Architect and, subject to Section 10.1.1, to object to any subcontractor or supplier with reasonable objection. Any advice of the Architect, or approval or objection by the Owner, shall not relieve the Contractor of its responsibility to perform the Work in accordance with the Contract Documents. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

**§ 10.1.1** When a specific subcontractor or supplier (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**§ 10.2** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the Owner's prior written approval. If a subcontract is awarded on the basis of cost plus a fee, the Contractor shall provide in the subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Contractor in Article 11. All Subcontracts shall be competitively bid, and no trade work shall be performed by the Contractor, or any related party, without the Owner's express authorization. The Contractor shall disclose to the Owner, in writing, whether the Contractor, its officers, directors or any person related to them has an ownership interest in a proposed Subcontractor or other entity performing the Work.

*(Paragraphs deleted)*

## ARTICLE 11 PROJECT RECORDS

The Contractor shall keep full and detailed records and accounts related to the Cost of the Work and exercise such controls as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's representatives, accountants and auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Contractor's records and accounts, including complete documentation supporting accounting entries, books, correspondence, instructions, drawings, receipts, canceled checks, subcontracts, Subcontractors' proposals, purchase orders, Project computer disks, vouchers, daily diaries, logs, takeoffs, memoranda and other data relating to this Contract. The Contractor shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.



AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**ARTICLE 12 PAYMENTS**

**§ 12.1 Progress Payments**

**§ 12.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor, and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum, to the Contractor, as provided below and elsewhere in the Contract Documents.

**§ 12.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**§ 12.1.3** The Owner, the Contractor (and the Architect and Lender, if the Owner so desires) shall correspond to establish the date upon which the Contractor's monthly Application for Payment and the Pencil Draw (as defined below) shall be submitted, the time period which will be allowed for review of such by the Owner, the Lender, and the Architect, and the date upon which the Owner's payment therefor shall be due. If the Owner, Contractor and Lender cannot agree on such a payment schedule, the payment schedule shall be as set forth in Section 12.1.3.1. The Contractor acknowledges that (a) advances from the Owner's Lender, and therefore payments due under this Agreement, shall not be made more frequently than on a monthly basis, and (b) the Owner's Lender may not be required to make any advance, and therefore the Owner is not required to make any advance payment.

*(Paragraph deleted)*

**§ 12.1.3.1** Except as may be otherwise agreed by the Owner, Contractor, shall submit a preliminary draft of the Application for Payment (hereinafter referred to as a "Pencil Draw") prepared by the Contractor not later than the 25th of each month. The Pencil draw shall conform to the requirements of the disbursing agreement (the "Disbursing Agreement') and the Contract Documents. The Contractor shall revise the Pencil Draw (within three (3) days after meeting /discussing with Owner/Owner's Representative) in accordance with any reasonable objection or recommendation of the Owner that is consistent with the requirements of the Contract Documents. The Contractor shall resubmit such revised Pencil Draw as the Application for Payment., which Application shall be due no later than the last day of the then-current month The Contractor shall also submit with each Application for Payment a written narrative describing the basis for any item set forth in the Application for Payment that does not conform to instructions of the Owner, the Lender, or the Architect in connection with any applicable Pencil Draw. The Owner's payments shall be due within thirty(30) calendar days after the Owner's receipt of the approved Application for Payment (that is, an Application for Payment that has been approved by the Owner and Architect, signed by the Contractor, and that is accompanied by all required supporting documentation and conditional lien releases), however Owner shall endeavor to pay as soon feasible after receipt of payment from the Lender.

With each Application for Payment, the Contractor shall submit invoices , subcontractor applications for payment, and any other reasonable evidence required by the Owner, Lender, or Architect to demonstrate that payments already made to the Contractor on account of the Cost of the Work equal or exceed progress payments already received by the Contractor , less that portion of the progress payments attributable to the Contractor's Fee. In addition to other required items, such Application for Payment shall be accompanied by a duly executed and acknowledged Contractor's Sworn Statement showing all Subcontractors with whom the Contractor has entered into subcontracts, the amount of each subcontract, the amount requested for any Subcontractor in the Application for Payment and the amount to be paid to the Subcontractor from such progress payment. If requested in writing, with each Application for Payment, the Contractor shall also provide copies of all Subcontractors' monthly applications for payment to substantiate the Contractor's Application for Payment. The parties confirm that Contractor will be a party to the Disbursing Agreement, which will contain reasonable requirements and timing for payments that may differ slightly from this Section 12, and in all events Contractor will comply with the Disbursing Agreement that has been executed by Contractor.

**§ 12.1.5** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents The schedule of values shall allocate the entire Guaranteed Maximum Price among: (1) the various portions of the Work; (2) any contingency for costs that are included in the Guaranteed Maximum Price but not otherwise allocated to another line item or included in a Change Order; and (3) the Contractor's Fee.

Init.

mtt /

AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1462982997)

**§ 12.1.5.1** The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. The schedule of values shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 12.1.5.2** The allocation of the Guaranteed Maximum Price under this Section 12.1.5 shall not constitute a separate guaranteed maximum price for the Cost of the Work of each individual line item in the schedule of values.

**§ 12.1.5.3** When the Contractor allocates costs from a contingency to another line item in the schedule of values, the Contractor shall submit supporting documentation to the Architect.

**§ 12.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work and for which the Contractor has made payment or intends to make payment prior to the next Application for Payment, by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

**§ 12.1.7** In accordance with AIA Document A201–2017 and subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

**§ 12.1.7.1** The amount of each progress payment shall first include:

- **.1** That portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the most recent schedule of values;
- **.2** That portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction or, if approved in writing in advance by the Owner, suitably stored off the site at a location agreed upon in writing;
- **.3** That portion of Construction Change Directives that the Record Architect determines, in the Architect's professional judgment, to be reasonably justified; and
- **.4** The Contractor's Fee, computed upon the Cost of the Work described in the preceding Sections 12.1.7.1.1 and 12.1.7.1.2 at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work included in Sections 12.1.7.1.1 and 12.1.7.1.2 bears to a reasonable estimate of the probable Cost of the Work upon its completion.

**§ 12.1.7.2** The amount of each progress payment shall then be reduced by:

- **.1** The aggregate of any amounts previously paid by the Owner;
- **.2** The amount, if any, for Work that remains uncorrected and for which the Architect has previously withheld a Certificate for Payment as provided in Article 9 of AIA Document A201–2017;
- **.3** Any amount for which the Contractor does not intend to pay a Subcontractor or material supplier, unless the Work has been performed by others the Contractor intends to pay;
- **.4** For Work performed or defects discovered since the last payment application, any amount for which the Record Architect may withhold payment, or nullify a Certificate of Payment in whole or in part, as provided in Article 9 of AIA Document A201–2017;
- **.5** The shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and
- **.6** Retainage withheld pursuant to Section 12.1.8.

**§ 12.1.8 Retainage**

**§ 12.1.8.1** For each progress payment made prior to Substantial Completion of the Work, the Owner may withhold the following amount, as retainage, from the payment otherwise due:
*(Insert a percentage or amount to be withheld as retainage from each Application for Payment. The amount of retainage may be limited by governing law.)*

Init.
MH/

AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1462982997)

Retainage equal to ten percent (10%) of the amount requested in each Application for Payment shall be withheld by the Owner until Substantial Completion of the entire Work. The Contractor may request the early release of retainage for certain Subcontractors, with the consent and approval of the Owner and Lender. Retainage shall not be withheld on General Conditions, General Requirements, Daily Cleanup, Dumpsters, Trash Chutes, Surveying, Material Hoist, Lull, Site Logistic Supervisor, Carpenter Foreman, and General Liability Insurance.
Upon achieving Substantial Completion of the entire Work, retention will be released, with the exception of the value of the punchlist. The Owner shall continue to hold until final completion of the entire Work (including but not limited to Punchlist Work) 150% of the Owner's and Lender's estimate of the value of the Punchlist Work as described in Section 7.2.1 of the General Conditions of the Contract. . Retainage with respect to Punchlist Work shall be paid upon completion of such punch list items to the reasonable satisfaction of the Record Architect.

**§ 12.1.8.1.1** The following items are not subject to retainage:
*(Insert any items not subject to the withholding of retainage, such as general conditions, insurance, etc.)*

Retainage shall not be withheld on General Conditions, General Requirements, Daily Cleanup, Dumpsters, Trash Chutes, Surveying, Material Hoist, Lull/Forklift, Site Logistic Supervisor, Carpenter Foreman, and General Liability Insurance

**§ 12.1.8.2** Reduction or limitation of retainage, if any, shall be as follows:
*(If the retainage established in Section 12.1.8.1 is to be modified prior to Substantial Completion of the entire Work, insert provisions for such modification.)*

The Contractor may request the early release of retainage for certain Subcontractors, with the consent and approval of the Owner and Lender.

**§ 12.1.8.3** Except as set forth in this Section 12.1.8.3, upon Substantial Completion of the Work, the Contractor may submit an Application for Payment that includes the retainage withheld from prior Applications for Payment pursuant to this Section 12.1.8. The Application for Payment submitted at Substantial Completion shall not include retainage as follows:
*(Insert any other conditions for release of retainage, such as upon completion of the Owner's audit and reconciliation, upon Substantial Completion.)*

**§ 12.1.9** If final completion of the Work is materially delayed through no fault of the Contractor, the Owner shall pay the Contractor any additional amounts in accordance with Article 9 of AIA Document A201–2017.

**§ 12.1.10** Except with the Owner's prior written approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and suitably stored at the site.

**§ 12.1.11** The Owner and the Contractor shall agree upon a mutually acceptable procedure for review and approval of payments to Subcontractors, and the percentage of retainage held on Subcontracts, and the Contractor shall execute subcontracts in accordance with those agreements.

**§ 12.1.12** In taking action on the Contractor's Applications for Payment the Architect and the Owner shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor, and such action shall not be deemed to be a representation that (1) the Architect and/or the Owner has made a detailed examination, audit, or arithmetic verification, of the documentation submitted in accordance with Section 12.1.4 or other supporting data; (2) that the Architect has made exhaustive or continuous on-site inspections; or (3) that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits, and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

**§ 12.1.13** As set forth in Section 12.1.4 above, each final and complete Application for Payment shall indicate the amount that the Contractor intends to pay to each Subcontractor and supplier from the amounts that the Owner pays to the Contractor (each such amount, a "Subcontractor Payment Amount"), which Subcontractor Payment Amount shall match the amount set forth in the conditional lien and claim release submitted by the Subcontractor or supplier. The


AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

Contractor shall pay the appropriate Subcontractor or supplier the corresponding Subcontractor Payment Amount approved by the Owner in each Certificate for Payment within five (5) days after receiving payment from the Owner unless the Contractor advises the Owner in writing of a dispute with a Subcontractor. If the Contractor fails to make timely payment of a Subcontractor Payment Amount, or at any time that the Owner in its sole discretion decides it is in the Owner's interest to do so, the Owner, at its sole election, may issue joint checks payable to the Contractor and the Subcontractor/suppliers , and such payments shall be deemed to be payments to the Contractor under this Contract. The Owner's right to elect to issue joint checks or make direct payments shall not give rise to an obligation of the Owner to do so for the benefit of the Contractor, a Subcontractor, a Sub-subcontractor, a supplier, or anyone else.

**§ 12.2 Final Payment**

**§ 12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

**.1** the Contractor has fully performed the Contract, except for the Contractor's responsibility to correct Work as provided in Article 12 of AIA Document A201–2017, and to satisfy other requirements, if any, which extend beyond final payment;

**.2** the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

**.3** a final Certificate for Payment has been issued by the Record Architect in accordance with Section 12.2.2, and approved by the Owner;

**.4**

**.5** and all conditions to final payment set forth in the Contract Documents have been satisfied.

**§ 12.2.2** Within 14 calendar days of the Owner's receipt of the Contractor's final accounting for the Cost of the Work, the Owner shall conduct an audit of the Cost of the Work or notify the Record Architect that it will not conduct an audit.

**§ 12.2.2.1** If the Owner conducts an audit of the Cost of the Work, the Owner shall, within 7 calendar days after completion of the audit, submit a written report based upon the auditors' findings to the Record Architect.

**§ 12.2.2.2** Within seven days after receipt of the written report described in Section 12.2.2.1, or receipt of notice that the Owner will not conduct an audit, and provided that the other conditions of Section 12.2.1 have been met, the Record Architect will either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Record Architect's reasons for withholding a certificate as provided in Article 9 of AIA Document A201–2017. The time periods stated in this Section 12.2.2 supersede those stated in Article 9 of AIA Document A201–2017. The Record Architect is not responsible for verifying the accuracy of the Contractor's final accounting.

**§ 12.2.2.3** If the Owner's auditors' report concludes that the Cost of the Work, as substantiated by the Contractor's final accounting, is less than claimed by the Contractor, the Contractor shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Article 15 of AIA Document A201–2017. A request for mediation shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Record Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Contractor. Pending a final resolution of the disputed amount, the Owner shall pay the Contractor the amount certified in the Record Architect's final Certificate for Payment.

**§ 12.2.3** The Owner's final payment to the Contractor shall be made no later than 30 calendar days after the issuance of the Record Architect's final Certificate for Payment, or as follows:

**§ 12.2.4** If, subsequent to final payment, and at the Owner's request, the Contractor incurs costs, described in Article 7 and not excluded by Article 8, to correct defective or nonconforming Work, the Owner shall reimburse the Contractor for such costs, and the Contractor's Fee applicable thereto, on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If adjustments to the Contract Sum are provided for in Section 5.1.7, the amount of those adjustments shall be recalculated, taking into account any reimbursements made pursuant to this Section 12.2.4 in determining the net amount to be paid by the Owner to the Contractor.


AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**§ 12.3 Interest**
Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

6% per annum

## ARTICLE 13 DISPUTE RESOLUTION

**§ 13.1 Initial Decision Maker**
The Record Architect will serve as Initial Decision Maker pursuant to Article 15 of AIA Document A201–2017, unless the parties appoint below another individual, not a party to the Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

**§ 13.2 Binding Dispute Resolution**
For any Claim subject to, but not resolved by the Direct Discussion procedure pursuant to Article 15 of AIA Document A201–2017, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box.)*

[ ] Arbitration pursuant to Section 15 of AIA Document A201–2017

[ X ] Litigation in a court of competent jurisdiction

[ ] Other *(Specify)*

If the Owner and Contractor do not select a method of binding dispute resolution, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction in the State of Florida.

**§ 13.3** This Contract shall be construed and interpreted according to the substantive laws of the State of Floridav in which the Project is located without regard to the choice of law/conflict of laws provisions thereof.

## ARTICLE 14 TERMINATION OR SUSPENSION

**§ 14.1 Termination**
**§ 14.1.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2017.

**§ 14.1.2 Termination by the Owner for Cause**
**§ 14.1.2.1** If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201–2017, the amount, if any, to be paid to the Contractor under Article 14 of AIA Document A201–2017 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

**.1** Take the Cost of the Work incurred by the Contractor to the date of termination;
**.2** Add the Contractor's Fee, computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion;
**.3** Subtract the aggregate of previous payments made by the Owner; and
**.4** Subtract the costs and damages incurred, or to be incurred, by the Owner under Article 14 of AIA Document A201–2017.



AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**§ 14.1.2.2** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.1.2.1.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**§ 14.1.3 Termination by the Owner for Convenience**
If the Owner terminates the Contract for convenience in accordance with Article 14 of AIA Document A201–2017, then the Owner shall pay the Contractor a termination fee as follows:
*(Insert the amount of or method for determining the fee, if any, payable to the Contractor following a termination for the Owner's convenience.)*
In case of such termination for the Owner's convenience, the Owner shall pay the Contractor only for Work properly executed; costs incurred by reason of the termination, including costs attributable to Owner's requested termination of Subcontracts; and the Subcontractors'/Suppliers' termination fee, if any, set forth in the Subcontractor's/Supplier's Agreement.

**§ 14.2 Suspension**
The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2017; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Article 14 of AIA Document A201–2017, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Article 5 and Section 6.4 of this Agreement.

**ARTICLE 15 MISCELLANEOUS PROVISIONS**
**§ 15.1** Where reference is made in this Agreement to a provision of AIA Document A201–2017 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 15.2** The Owner's representative:
*(Name, address, email address and other information)*

Chris Johnson
4240 Manchester Ave.
St. Louis, MO 63110
314-446-4522
Design2@checkmatedesign.com

**§ 15.3** The Contractor's representative:
*(Name, address, email address and other information)*

Martin Hogan
18851 NE 29th Avenue, Suite 413
Aventura, FL 33180
305-360-0011
martinh@hoganbrothers.net

**§ 15.4** Neither the Owner's nor the Contractor's representative shall be changed without ten days' prior notice to the other party.

Init.
MH /

AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

(1462982997)

**§ 15.5 Insurance**

**§ 15.5.1** The Owner and the Contractor shall purchase and maintain insurance as set forth in AIA Document A102™–2017, Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, Exhibit G, Insurance , and elsewhere in the Contract Documents.

*(Paragraph deleted)*

**§ 15.6** Notice in electronic format, pursuant to Article 1 of AIA Document A201–2017, may be given in accordance with AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, if completed, or as otherwise set forth below:

*(If other than in accordance with AIA Document E203–2013, insert requirements for delivering notice in electronic format such as name, title, and email address of the recipient and whether and how the system will be required to generate a read receipt for the transmission.)*

**§ 15.7** Other provisions:

**§ 15.7.1** Contractor acknowledges that only Owner and Architect are authorized to communicate with National Park Service regarding the Project, and Contractor shall not, and shall ensure that its subcontractors, sub subcontractors, and the employees and agents of all of them do not, knowingly contact or communicate with the National Park Service regarding the Project or the Project site. Any request or need for such communications shall be referred to Owner promptly.

**§ 15.7.2** Confidentiality. Owner's finishes, designs, materials and methods at the Project shall be confidential, and shall not be shared by Contractor except to its employees, Subcontractors and others involved in the project, as reasonably necessary to perform the work or contractor's obligations under the Contract Documents.

**§ 15.7.3** NON-DISCRIMINATION POLICY. The Contractor warrants and represents that all of its employees, subconsultants and subcontractors are treated equally during selection, employment and/or engagement without regard to race, color, religion, disability, sex, age, national origin, ancestry, political affiliation, marital status, handicap, or sexual orientation. Further, the Contractor shall not discriminate or permit discrimination against any employee or an applicant for employment on the basis of race, color, sex, religion, political affiliation, natural origin, ancestry, marital status, sexual orientation or handicap.

**§ 15.7.5** FORCE MAJEURE. In connection with Claims for Additional Time made pursuant to Article 15 of AIA Document A201, Contractor acknowledges that Owner is required to give the City of Lake Worth Beach certain notices of " Force Majeure", defined as any of the following events or conditions or any combination thereof: acts of God, acts of the public enemy, riot, insurrection, war, act of terrorism, pestilence, archaeological excavations required by law, unavailability of materials, epidemics (including, without limitation, cases of illness or condition, communicable or non-communicable, caused by bioterrorism, pandemic influenza, or novel and highly infectious viruses, agents or biological toxins), pandemics, disease, quarantine restrictions, freight embargoes, fire, lightning, hurricanes, earthquakes, tornadoes, floods, abnormal and highly unusual inclement weather (as indicated by the records of the local weather bureau for a five-year period preceding June 2022), strikes or labor disturbances, restoration in connection with any of the foregoing, and acts of any Governmental Authority; and, which events or conditions or any combination thereof are beyond the reasonable control of the Contractor and cause delays in the performance or prosecution of the Contractor's obligations. The Contractor agrees, to use commercially reasonable efforts to remedy the cause or causes preventing the Contractor from timely carrying out its obligations. The Contractor shall provide written notice on not less than a monthly basis on the form attached hereto as Exhibit I, with items indicated and an updated construction schedule attached, to be delivered to 1) Owner if there are no claimed Force Majeure events for the prior month, and (ii) to both the Owner and the Community Sustainability Director of the City of Lake Worth Beach Florida or designee ; in all events Owner and the City must receive such Exhibit written notice within 120 days after the occurrence of any Force Majeure event. Failure to timely and properly notice the

Init.

AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

Owner and City as required above will result in the Contractor's waiver of the Force Majeure event as cause for delay in the Contractor's performance of its obligations herein.

**ARTICLE 16 ENUMERATION OF CONTRACT DOCUMENTS**

**§ 16.1** This Agreement is comprised of the following documents:

**.1** AIA Document A102™–2017, Standard Form of Agreement Between Owner and Contractor, as attached hereto.

**.2** AIA Document A102™–2017, Exhibit G, Insurance

**.3** AIA Document A201™–2017, General Conditions of the Contract for Construction, as attached hereto.

**.4**

**.9** Other documents, if any, listed below:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2017 provides that the advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or proposal, portions of Addenda relating to bidding or proposal requirements, and other information furnished by the Owner in anticipation of receiving bids or*


AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1462982997)

*proposals, are not part of the Contract Documents unless enumerated in this Agreement. Any such documents should be listed here only if intended to be part of the Contract Documents.)*

| | |
|---|---|
| Exhibit A__ | Contractors Qualifications & Clarifications |
| Exhibit B | Guaranteed Maximum Price Breakdown |
| Exhibit C | Schedule of Values |
| Exhibit D | General Conditions Costs Breakdown |
| Exhibit E | Project Schedule |
| Exhibit G | Insurance |
| Exhibit H | Drawings |
| Exhibit I | Force Majeure Form |

This Agreement entered into as of the day and year first written above.

**OWNER** *(Signature)*

*(Printed name and title)*

**CONTRACTOR** *(Signature)*

Matthew Hogan President

*(Printed name and title)*

Init.

AIA Document A102 – 2017. Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:45:45 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:



(1462982997)

# AIA® Document A201® – 2017

## *General Conditions of the Contract for Construction*

**for the following PROJECT:**
*(Name and location or address)*

Renovation and Addition of the Gulfstream Historic Hotel located at 1 Lake Avenue,

**THE OWNER:**
*(Name, legal status and address)*

Restoration St. Louis, LLC
4240 Manchester Ave.
St. Louis, MO 63110
Attn: Amrit Gill at amrit@restorationstl.com

**THE ARCHITECT:**
*(Name, legal status and address)*

Checkmate Design, LLC
4240 Manchester Ave
St. Louis MO, 63110

Record Architect: Beilinson Gomez Architects PA.
8101 Biscayne Blvd. S #309
Miami, FL, 33138

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

For guidance in modifying this document to include supplementary conditions, see AIA Document A503™, Guide for Supplementary Conditions.

**TABLE OF ARTICLES**


1 GENERAL PROVISIONS

2 OWNER

3 CONTRACTOR

4 ARCHITECT

5 SUBCONTRACTORS

6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7 CHANGES IN THE WORK

8 TIME

9 PAYMENTS AND COMPLETION

10 PROTECTION OF PERSONS AND PROPERTY

11 INSURANCE AND BONDS




AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**12 UNCOVERING AND CORRECTION OF WORK**

**13 MISCELLANEOUS PROVISIONS**

**14 TERMINATION OR SUSPENSION OF THE CONTRACT**

**15 CLAIMS AND DISPUTES**


Init.

MH /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**INDEX**
(Topics and numbers in bold are Section headings.)


**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5, 10.2.8, 13.3.2, 14.1, 15.1.2, 15.2
Addenda
1.1.1
Additional Costs, Claims for
3.7.4, 3.7.5, 10.3.2, 15.1.5
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.4**
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.6**
**Administration of the Contract**
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.5.4, 9.6.3, 9.7, 9.10
Approvals
2.1.1, 2.3.1, 2.5, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10.1, 4.2.7, 9.3.2, 13.4.1
**Arbitration**
8.3.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
**Architect**, Definition of
**4.1.1**
Architect, Extent of Authority
2.5, 3.12.7, 4.1.2, 4.2, 5.2, 6.3, 7.1.2, 7.3.4, 7.4, 9.2, 9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.4.1, 13.4.2, 14.2.2, 14.2.4, 15.1.4, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4, 9.4.2, 9.5.4, 9.6.4, 15.1.4, 15.2
Architect's Additional Services and Expenses
2.5, 12.2.1, 13.4.2, 13.4.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.5, 3.1.3, 3.5, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3, 7.3.4, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1, 13.4.2, 15.2
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.4
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.4.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 2.3.3, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 12, 13.3.2, 13.4, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.4
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.6.8, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1
Binding Dispute Resolution
8.3.1, 9.7, 11.5, 13.1, 15.1.2, 15.1.3, 15.2.1, 15.2.5, 15.2.6.1, 15.3.1, 15.3.2, 15.3.3, 15.4.1
Bonds, Lien
7.3.4.4, 9.6.8, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.4.4, 9.6.7, 9.10.3, **11.1.2**, 11.1.3, **11.5**
**Building Information Models Use and Reliance**
**1.8**
Building Permit
3.7.1
**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5




AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.4
Certificates of Inspection, Testing or Approval
13.4.4
Certificates of Insurance
9.10.2
**Change Orders**
1.1.1, 3.4.2, 3.7.4, 3.8.2.3, 3.11, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.7, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.2, 11.5, 12.1.2
**Change Orders**, Definition of
**7.2.1**
**CHANGES IN THE WORK**
2.2.2, 3.11, 4.2.8, **7**, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1, 11.5
**Claims**, Definition of
**15.1.1**
Claims, Notice of
1.6.2, 15.1.3
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.3.1, 3.7.4, 7.3.9, 9.5.2, 10.2.5, 10.3.2, **15.1.5**
**Claims for Additional Time**
3.2.4, 3.3.1, 3.7.4, 6.1.1, 8.3.2, 9.5.2, 10.3.2, **15.1.6**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 8.3.3, 9.5.1, 9.6.7, 10.2.5, 10.3.3, 11.3, 11.3.2, 14.2.4, 15.1.7
Claims Subject to Arbitration
15.4.1
**Cleaning Up**
**3.15**, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.2, **15.1.5**
**Commencement of the Work**, Definition of
**8.1.2**
**Communications**
3.9.1, **4.2.4**
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 14.1.2, 15.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
3.10.1, 4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 15.1.2
Compliance with Laws
2.3.2, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 9.6.4, 10.2.2, 13.1, 13.3, 13.4.1, 13.4.2, 13.5, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.14.2, 4.1.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 13.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
1.1.4, **6**
**Construction Change Directive**, Definition of
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.11, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3**, 9.3.1.1
Construction Schedules, Contractor's
3.10, 3.11, 3.12.1, 3.12.2, 6.1.3, 15.1.6.2
**Contingent Assignment of Subcontracts**
**5.4**, 14.2.2.2
**Continuing Contract Performance**
**15.1.4**
**Contract**, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR SUSPENSION OF THE**
5.4.1.1, 5.4.2, 11.5, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.3.6, 5.3
**Contract Documents**, Definition of
**1.1.1**
**Contract Sum**
2.2.2, 2.2.4, 3.7.4, 3.7.5, 3.8, 3.10.2, 5.2.3, 7.3, 7.4, **9.1**, 9.2, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.5, **12.1.2**, 12.3, 14.2.4, 14.3.2, 15.1.4.2, **15.1.5**, **15.2.5**
**Contract Sum**, Definition of
**9.1**
Contract Time
1.1.4, 2.2.1, 2.2.2, 3.7.4, 3.7.5, 3.10.2, 5.2.3, 6.1.5, 7.2.1.3, 7.3.1, 7.3.5, 7.3.6, 7, 7, 7.3.10, 7.4, 8.1.1, 8.2.1, 8.2.3, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 12.1.2, 14.3.2, 15.1.4.2, 15.1.6.1, 15.2.5
**Contract Time**, Definition of
8.1.1
**CONTRACTOR**
**3**
Contractor, Definition of
**3.1**, **6.1.2**
**Contractor's Construction and Submittal Schedules**
**3.10**, 3.12.1, 3.12.2, 4.2.3, 6.1.3, 15.1.6.2

Init.
mtt /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

Contractor's Employees
2.2.4, 3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.3, 14.1, 14.2.1.1
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 2.2.4, 3.3.2, 3.18.1, 3.18.2, 4.2.4, 5, 9.6.2, 9.6.7, 9.10.2, 11.2, 11.3, 11.4
Contractor's Relationship with the Architect
1.1.2, 1.5, 2.3.3, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5.1, 3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 12, 13.4, 15.1.3, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the Work
3.3.2, 3.18, 5.3, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
2.2.2, 9.7
Contractor's Right to Terminate the Contract
14.1
Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.4, 7.3.6, 8.2, 10, 12, 14, 15.1.4
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.3.6, 3.11
Copyrights
1.5, **3.17**
Correction of Work
2.5, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**, 12.3, 15.1.3.1, 15.1.3.2, 15.2.1
**Correlation and Intent of the Contract Documents**
**1.2**
**Cost**, Definition of
**7.3.4**
Costs
2.5, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.4, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.2, 12.1.2, 12.2.1, 12.2.4, 13.4, 14
**Cutting and Patching**
**3.14**, 6.2.5
Damage to Construction of Owner or Separate Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.3.2, 11.3, 14.2.4, 15.1.7
Damages for Delay
6.2.3, 8.3.3, 9.5.1.6, 9.7, 10.3.2, 14.3.2
**Date of Commencement of the Work**, Definition of
**8.1.2**
**Date of Substantial Completion**, Definition of
**8.1.3**
**Day**, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 6.3, 7.3.4, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.4.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance, Rejection and Correction of
2.5, 3.5, 4.2.6, 6.2.3, 9.5.1, 9.5.3, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1, 15.1.1
**Delays and Extensions of Time**
**3.2, 3.7.4**, 5.2.3, 7.2.1, 7.3.1, **7.4**, **8.3**, 9.5.1, **9.7**, 10.3.2, **10.4**, 14.3.2, **15.1.6**, 15.2.5
**Digital Data Use and Transmission**
**1.7**
Disputes
6.3, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings**, Definition of
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2
**Emergencies**
**10.4**, 14.1.1.2, **15.1.5**
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3.3, 11.3, 14.1, 14.2.1.1
Equipment, Labor, or Materials
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.3.4, 2.3.6, 3.1, 3.3.1, 3.4.1, 3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.6, 8.2, 9.5.1, 9.9.1, 10.2, 10.3, 12.1, 12.2, 14.2, 14.3.1, 15.1.4

Init.
AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2, 10.4, 14.3, 15.1.6, **15.2.5**
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.5, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 12.3, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
**GENERAL PROVISIONS**
**1**
**Governing Law**
**13.1**
Guarantees (See Warranty)
**Hazardous Materials and Substances**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17, **3.18**, 9.6.8, 9.10.2, 10.3.3, 11.3
**Information and Services Required of the Owner**
2.1.2, **2.2**, 2.3, 3.2.2, 3.12.10.1, 6.1.3, 6.1.4, 6.2.5, 9.6.1, 9.9.2, 9.10.3, 10.3.3, 11.2, 13.4.1, 13.4.2, 14.1.1.4, 14.1.4, 15.1.4
**Initial Decision**
**15.2**
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.4, 15.1.4.2, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.4, 15.1.4.2, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
**Injury or Damage to Person or Property**
**10.2.8**, 10.4
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.4
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.4.2
**Instruments of Service**, Definition of
**1.1.7**
Insurance
6.1.1, 7.3.4, 8.2.2, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 10.2.5, **11**
Insurance, Notice of Cancellation or Expiration
11.1.4, 11.2.3
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
8.2.2, 14.4.2
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
**10.2.5**, 11.2, 11.4, 11.5
Insurance, Stored Materials
9.3.2
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.9.1
Insured loss, Adjustment and Settlement of
11.5
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13
**Interest**
**13.5**
**Interpretation**
1.1.8, 1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 2.3.2, 3.2.3, 3.2.4, 3.6, 3.7, 3.12.10, 3.13, 9.6.4, 9.9.1, 10.2.2, 13.1, 13.3.1, 13.4.2, 13.5, 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.1, 9.3.3, 9.6.8, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 15.1.2, 15.4.1.1
Limitations of Liability
3.2.2, 3.5, 3.12.10, 3.12.10.1, 3.17, 3.18.1, 4.2.6, 4.2.7, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 9.6.8, 10.2.5, 10.3.3, 11.3, 12.2.5, 13.3.1
Limitations of Time
2.1.2, 2.2, 2.5, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7, 5.2, 5.3, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 12.2, 13.4, 14, 15, 15.1.2, 15.1.3, 15.1.5
**Materials, Hazardous**
**10.2.4**, **10.3**
Materials, Labor, Equipment and
1.1.3, 1.1.6, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 9.3.1, 9.3.3, 9.6.8, 9.10.2, 9.10.4, 15.2.8
**Mediation**
8.3.1, 15.1.3.2, 15.2.1, 15.2.5, 15.2.6, **15.3**, 15.4.1, 15.4.1.1
**Minor Changes in the Work**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1, **7.4**

Init.

mH /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**MISCELLANEOUS PROVISIONS**
**13**
**Modifications**, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 2.5, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7, 10.3.2
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.4, 2.5, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2
**Notice**
**1.6**, 1.6.1, 1.6.2, 2.1.2, 2.2.2., 2.2.3, 2.2.4, 2.5, 3.2.4, 3.3.1, 3.7.4, 3.7.5, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 7.4, 8.2.2 9.6.8, 9.7, 9.10.1, 10.2.8, 10.3.2, 11.5, 12.2.2.1, 13.4.1, 13.4.2, 14.1, 14.2.2, 14.4.2, 15.1.3, 15.1.5, 15.1.6, 15.4.1
Notice of Cancellation or Expiration of Insurance
11.1.4, 11.2.3
**Notice of Claims**
1.6.2, 2.1.2, 3.7.4, 9.6.8, 10.2.8, **15.1.3**, 15.1.5, 15.1.6, 15.2.8, 15.3.2, 15.4.1
Notice of Testing and Inspections
13.4.1, 13.4.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.3.1, 9.6.6, 9.8
Orders, Written
1.1.1, 2.4, 3.9.2, 7, 8.2.2, 11.5, 12.1, 12.2.2.1, 13.4.2, 14.3.1
**OWNER**
**2**
**Owner**, Definition of
**2.1.1**
**Owner, Evidence of Financial Arrangements**
**2.2**, 13.2.2, 14.1.1.4
**Owner, Information and Services Required of the**
2.1.2, **2.2**, 2.3, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 13.4.1, 13.4.2, 14.1.1.4, **14.1.4**, 15.1.4
Owner's Authority
1.5, 2.1.1, 2.3.32.4, 2.5, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1, 9.10.2, 10.3.2, 11.4, 11.5, 12.2.2, 12.3, 13.2.2, 14.3, 14.4, 15.2.7
**Owner's Insurance**
**11.2**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
**2.5**, 14.2.2
**Owner's Right to Clean Up**
**6.3**
**Owner's Right to Perform Construction and to Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.4**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2, 14.4
**Ownership and Use of Drawings, Specifications and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.3.6, 3.2.2, 3.11, 3.17, 4.2.12, 5.3
**Partial Occupancy or Use**
9.6.6, **9.9**
**Patching, Cutting and**
**3.14**, 6.2.5
Patents
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1, 14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, **9.7**, 9.10.2, 13.5, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, **9.10**, 12.3, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.4.4, 9.6.7, 9.10.3, **11.1.2**
**Payments, Progress**
9.3, **9.6**, 9.8.5, 9.10.3, 14.2.3, 15.1.4
**PAYMENTS AND COMPLETION**
**9**
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1
**Performance Bond and Payment Bond**
7.3.4.4, 9.6.7, 9.10.3, **11.1.2**
**Permits, Fees, Notices and Compliance with Laws**
2.3.1, **3.7**, 3.13, 7.3.4.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**10**
Polychlorinated Biphenyl
10.3.1
**Product Data**, Definition of
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.4
**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 14.2.3, 15.1.4

Init.
JAH /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**Project**, Definition of
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.2**
**Proposal Requirements**
1.1.1
**PROTECTION OF PERSONS AND PROPERTY**
**10**
Regulations and Laws
1.5, 2.3.2, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 9.6.4, 9.9.1, 10.2.2, 13.1, 13.3, 13.4.1, 13.4.2, 13.5, 14, 15.2.8, 15.4
Rejection of Work
4.2.6, 12.2.1
Releases and Waivers of Liens
9.3.1, 9.10.2
Representations
3.2.1, 3.5, 3.12.6, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.10, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.2, 4.2.3, 5.3, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples by Contractor
3.12
**Rights and Remedies**
1.1.2, 2.4, 2.5, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.1, 12.2.2, 12.2.4, **13.3**, 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**
Rules and Notices for Arbitration
15.4.1
**Safety of Persons and Property**
**10.2**, 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3, **10.1**, 10.2, 10.4
**Samples**, Definition of
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
**9.2**, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.6.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
**Separate Contractors**, Definition of
**6.1.1**
**Shop Drawings**, Definition of
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7
**Site, Use of**
**3.13**, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.9.2, 9.4.2, 9.10.1, 13.4
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.4
Special Inspections and Testing
4.2.6, 12.2.1, 13.4
**Specifications**, Definition of
**1.1.6**
**Specifications**
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.12.10, 3.17, 4.2.14
Statute of Limitations
15.1.2, 15.4.1.1
Stopping the Work
2.2.2, 2.4, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
**Subcontractor**, Definition of
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 3.18, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
**Subcontractual Relations**
**5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.4, 9.2, 9.3, 9.8, 9.9.1, 9.10.2, 9.10.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, **11.3**
**Substances, Hazardous**
**10.3**
**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3, 12.2, 15.1.2
**Substantial Completion**, Definition of
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
2.3.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**

Init.
/

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.4, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.4
Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.5.4, 9.6, 9.10.5, 14.2.1
Surety
5.4.1.2, 9.6.8, 9.8.5, 9.10.2, 9.10.3, 11.1.2, 14.2.2, 15.2.7
Surety, Consent of
9.8.5, 9.10.2, 9.10.3
Surveys
1.1.7, 2.3.4
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
3.7.5, 5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
**Taxes**
3.6, 3.8.2.1, 7.3.4.4
**Termination by the Contractor**
**14.1**, 15.1.7
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.7
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
2.3.3
Termination of the Contractor Employment
14.2.2

**TERMINATION OR SUSPENSION OF THE CONTRACT**
**14**
**Tests and Inspections**
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 12.2.1, **13.4**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7, 10.3.2, 10.4, 14.3.2, 15.1.6, 15.2.5
Time Limits
2.1.2, 2.2, 2.5, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 12.2, 13.4, 14, 15.1.2, 15.1.3, 15.4
**Time Limits on Claims**
3.7.4, 10.2.8, 15.1.2, 15.1.3
Title to Work
9.3.2, 9.3.3
**UNCOVERING AND CORRECTION OF WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 9.1.2
Use of Documents
1.1.1, 1.5, 2.3.6, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.3.2
Waiver of Claims by the Contractor
9.10.5, 13.3.2, **15.1.7**
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.3.2, 14.2.4, **15.1.7**
Waiver of Consequential Damages
14.2.4, 15.1.7
Waiver of Liens
9.3, 9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, **11.3**
**Warranty**
**3.5**, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.2, 9.10.4, 12.2.2, 15.1.2
Weather Delays
8.3, 15.1.6.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.10.3, 13.2, 13.3.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12
Written Orders
1.1.1, 2.4, 3.9, 7, 8.2.2, 12.1, 12.2, 13.4.2, 14.3.1



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

## ARTICLE 1 GENERAL PROVISIONS

### § 1.1 Basic Definitions

**§ 1.1.1 The Contract Documents**

The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, all Exhibits to the Agreement (including theseGeneral Conditions, AIA Document A201, 2017 edition), Drawings, Specifications, other documents listed in the Agreement, and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive, or (4) a written order for a minor change in the Work issued by the Architect and agreed to by Contractor (not to be unreasonably withheld). Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding or proposal requirements.

**§ 1.1.2 The Contract**

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants, or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

**§ 1.1.3 The Work**

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment, and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

**§ 1.1.4 The Project**

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by Separate Contractors.

**§ 1.1.5 The Drawings**

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules, and diagrams.

**§ 1.1.6 The Specifications**

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

**§ 1.1.7 Instruments of Service**

Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

**§ 1.1.8 Initial Decision Maker**

The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2. The Initial Decision Maker shall not show partiality to the Owner or Contractor and shall not be liable for results of interpretations or decisions rendered in good faith.

### § 1.2 Correlation and Intent of the Contract Documents

**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**§ 1.2.1.1** The invalidity of any provision of the Contract Documents shall not invalidate the Contract or its remaining provisions. If it is determined that any provision of the Contract Documents violates any law, or is otherwise invalid or unenforceable, then that provision shall be revised to the extent necessary to make that provision legal and enforceable. In such case the Contract Documents shall be construed, to the fullest extent permitted by law, to give effect to the parties' intentions and purposes in executing the Contract.

**§ 1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade. In general, the Drawings shall be considered as establishing location, quantity and relationship of materials and the Specifications shall be considered as defining type and quality of materials and workmanship requirements.

**§ 1.2.3** Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings. If the Agreement is a guaranteed maximum price type contract, the term "Contract Sum" shall mean the Guaranteed Maximum Price (as defined in the Agreement) and any reference herein to costs to be borne by the Contractor (or Work to be carried out at the Contractor's expense) shall be reimbursable to the Contractor as a Cost of the Work to the extent permitted by the provisions of the Agreement.

**§ 1.2.4** The Contractor agrees that the later refinement or description of any Work set forth in or reasonably inferable from the Contract Documents whether by written specifications, directions or clarifications, shall entitle the Contractor to compensation in addition to the Contract Sum, only if: (1) such later description involves work of a different nature, character, scope or cost than that set forth in or reasonably inferable from the Contract Documents in existence as of the date of the Contract, and (2) the Owner has authorized the Contractor to proceed with such work in advance and in writing in a signed Change Order or Construction Change Directive ("CCD").

**§ 1.3 Capitalization**
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles, or (3) the titles of other documents published by the American Institute of Architects.

**§ 1.4 Interpretation**
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

**§ 1.5 Ownership and Use of Drawings, Specifications, and Other Instruments of Service**
**§ 1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and retain all common law, statutory, and other reserved rights in their Instruments of Service, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with the Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

**§ 1.5.2** The Contractor, Subcontractors, Sub-subcontractors, and suppliers are authorized to use and reproduce the Instruments of Service provided to them, subject to any protocols established pursuant to Sections 1.7 and 1.8, solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and suppliers may not use the Instruments of Service on other projects or for additions to the Project outside the scope of the Work without the specific written consent of the Owner, Architect, and the Architect's consultants.

**§ 1.6 Notice**
**§ 1.6.1** Except as otherwise provided in Section 1.6.2, where the Contract Documents require one party to notify or give notice to the other party, such notice shall be provided in writing to the designated representative of the party to whom the notice is addressed and shall be deemed to have been duly served if delivered in person, by mail, by courier, or by electronic transmission if a method for electronic transmission is set forth in the Agreement.

Init.
MA /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 1.6.2** Notice of Claims as provided in Section 15.1.3 shall be provided in writing and shall be deemed to have been duly served only if delivered to the designated representative of the party to whom the notice is addressed by certified or registered mail, or by courier providing proof of delivery.

**§ 1.7 Digital Data Use and Transmission**
The parties shall agree upon protocols governing the transmission and use of Instruments of Service or any other information or documentation in digital form.

*(Paragraphs deleted)*
**ARTICLE 2 OWNER**
**§ 2.1 General**
**§ 2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 2.1.2** The Owner shall furnish to the Contractor a Recorded Notice of Commencement, within calendar days after execution of this Agreement (or, if later, immediately upon recording at the financial closing, and prior to the effectiveness of the Notice to Proceed) so the Contractor can give notice of, or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

**§ 2.2 Evidence of the Owner's Financial Arrangements**
**§ 2.2.1** Prior to commencement of the Work and upon written request by the Contractor, the Owner shall furnish to the Contractor reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. The Contractor shall have no obligation to commence the Work until the Owner provides such evidence. If commencement of the Work is delayed under this Section 2.2.1, the Contract Time shall be extended appropriately.

**§ 2.2.2** Following commencement of the Work and upon written request by the Contractor, the Owner shall furnish to the Contractor reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract only if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due; or (3) a change in the Work materially changes the Contract Sum. If the Owner fails to provide such evidence, as required, within fourteen days of the Contractor's request, the Contractor may immediately stop the Work and, in that event, shall notify the Owner that the Work has stopped. However, if the request is made because a change in the Work materially changes the Contract Sum under (3) above, the Contractor may immediately stop only that portion of the Work affected by the change until reasonable evidence is provided. If the Work is stopped under this Section 2.2.2, the Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shutdown, delay and start-up, plus interest as provided in the Contract Documents.

**§ 2.2.3** After the Owner furnishes evidence of financial arrangements under this Section 2.2, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

**§ 2.2.4** Where the Owner has designated information furnished under this Section 2.2 as "confidential," the Contractor shall keep the information confidential and shall not disclose it to any other person. However, the Contractor may disclose "confidential" information, after seven (7) days' notice to the Owner, where disclosure is required by law, including a subpoena or other form of compulsory legal process issued by a court or governmental entity, or by court or arbitrator(s) order. The Contractor may also disclose "confidential" information to its employees, consultants, sureties, Subcontractors and their employees, Sub-subcontractors, and others who need to know the content of such information solely and exclusively for the Project and who agree to maintain the confidentiality of such information.


AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 2.3 Information and Services Required of the Owner**

**§ 2.3.1** Except for subcontractor permits and subcontractor permit fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, permits, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**§ 2.3.2** The Owner shall retain an architect lawfully licensed to practice architecture, or an entity lawfully practicing architecture, in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

**§ 2.3.3** If the employment of the Architect terminates, the Owner shall employ a successor to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

**§ 2.3.4** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 2.3.5** The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

**§ 2.3.6** Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

**§ 2.4 Owner's Right to Stop the Work**

If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

**§ 2.5 Owner's Right to Carry Out the Work**

If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten (10) day period after receipt of notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such default or neglect. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Record Architect and the Record Architect may, pursuant to Section 9.5.1, withhold or nullify a Certificate for Payment in whole or in part, to the extent reasonably necessary to reimburse the Owner for the reasonable cost of correcting such deficiencies, including Owner's expenses made necessary by such default, neglect, or failure. If current and future payments are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner. If the Contractor disagrees with the actions of the Owner or the Record Architect, or the amounts claimed as costs to the Owner, the Contractor may file a Claim pursuant to Article 15.

## ARTICLE 3 CONTRACTOR

**§ 3.1 General**

**§ 3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

**§ 3.1.2** The Contractor shall perform the Work in accordance with the Contract Documents.


AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 3.1.3** The Contractor shall not be relieved of its obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

**§ 3.2 Review of Contract Documents and Field Conditions by Contractor**
**§ 3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed (including, but not limited to the location, condition, layout and nature of the Project site and surrounding areas, generally prevailing climactic conditions, current labor costs, availability and cost of materials, tools and equipment and other similar matters), and correlated personal observations with requirements of the Contract Documents. The Contractor hereby specifically acknowledges and declares that the Drawings andthe Specifications are sufficient to enable the Contractor to perform the Work and otherwise fulfill its obligations under the Contact Documents The Contractor represents that it has carefully examined all Contract Documents and acknowledges that the Contractor shall not be entitled to an extension of the Contract Time or an adjustment in the Contract Sum to the extent the Contract Documents contain inconsistencies of which the Contractor had knowledge (or which the Contractor should have had knowledge had the Contractor diligently and carefully reviewed the Contract Documents) and failed to report such errors, omissions or inconsistencies to the Owner and the Architect prior to establishment of the Contract Sum.

**§ 3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.3.4, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents.

**§ 3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.

**§ 3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall submit a written Change Order for additional cost or time as provided in the Contract Documents. . If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner, subject to Section 15.1.7, as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

**§ 3.3 Supervision and Construction Procedures**
**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the Work under the Contract. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences, or procedures, the Contractor shall evaluate the jobsite safety thereof and shall be solely responsible for the jobsite safety of such means, methods, techniques, sequences, or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect, and shall propose alternative means, methods, techniques, sequences, or procedures. The Architect shall evaluate the proposed alternative solely for conformance with the design intent for the completed construction. Unless the Architect objects to the Contractor's proposed alternative, the Contractor shall perform the Work using its alternative means, methods, techniques, sequences, or procedures.

Init.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:



(1198346052)

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

§ 3.3.3 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

§ 3.3.4 The Contractor shall perform the Work in a skillful and competent manner in accordance with applicable standards of the construction industry and the Contract Documents.

§ 3.3.5 Beginning with the commencement of the Work, the Contractor shall hold weekly progress meetings at the Project site. At such meetings, the progress of the Work shall be reported in detail with reference to the Project schedule, and all problems or other issues relating to the Work shall be discussed. . Each Subcontractor then performing work on the Project shall have a competent representative present at each weekly meeting to report on the condition of his work and to receive information regarding the performance of future work by the Subcontractor. The Owner and Architect shall have the right to attend such meetings, either in person or electronically, and Contractor shall keep minutes of each meeting held pursuant to this Section At such meetings, the progress of the Work shall be reported in detail with reference to the Project schedule, and all problems or other issues relating to the Work shall be discussed and Contractor shall provide a weekly written progress report to Owner and Architect detailing all material issues that have occurred or been discussed over the prior week. In between weekly progress meetings, the Contractor shall provide written notice within twenty four (24) hours of any major incident, including but not limited to (i) any injury to any person or (ii) damage to the work in excess of $10,000, or iii) anything else which would generally be considered to have a material impact on the project or the rights of the parties,or the construction schedule.

**§ 3.4 Labor and Materials**

§ 3.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 3.4.2 Except in the case of minor changes in the Work approved by the Architect and Contractor (not to be unreasonably withheld) in accordance with Section 3.12.8 or ordered by the Architect and approved by Contractor (not to be unreasonably withheld) in accordance with Section 7.4, the Contractor may make substitutions, only with the consent of the Owner,except as already concentedin Exhibit A -Contractors Qualifications and Clarifications), after evaluation by the Record Architect and in accordance with a Change Order or Construction Change Directive

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

**§ 3.5 Warranty**

§ 3.5.1 The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

§ 3.5.2 All material, equipment, or other special warranties required by the Contract Documents shall be issued in the name of the Owner, or shall be transferable to the Owner, and shall commence in accordance with Section 9.8.4.

§ 3.5.3 Subsequent to Substantial Completion of the Work, at a time mutually agreed upon by Owner and Contractor, Contractor and all applicable material Subcontractors shall meet with the Owner's designated representatives and conduct a complete review of all equipment and mechanical and electrical systems and the operation and maintenance

Init.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

of such systems. As a result of this review, Contractor shall make all adjustments or corrections and shall balance all systems in order to make all equipment and systems perform as required by the Contract Documents.

**§ 3.5.5** All warranties provided in the Contract and all provisions for correction of Work in Article 12 shall include Work of Subcontractors and sub-subcontractors, materialmen and suppliers. Limitations on warranties and the Contractor's obligation to correct Work shall not apply to latent breaches of the Contract or the Work nor to any specific warranties contained in or required by any of the Contract Documents. Failure of manufacturers to guarantee products will not relieve the Contractor of its obligations under this Contract. The Contractor shall not be required to guarantee a product that the manufacturer will not warrant due to its application as specified in the Contract Documents, provided the Contractor gives the Owner prompt written notice of such fact upon learning of the manufacturer's position (in which event the Contractor should not proceed with the application directed by the Contract Documents until receiving further direction from the Owner and Architect). Subcontractors shall guarantee their work to the Owner and Contractor. The Contractor shall be responsible for any costs or expenses arising in connection with or as a result of any defective and/or nonconforming Work.

**§ 3.6 Taxes**
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

**§ 3.7 Permits, Fees, Notices and Compliance with Laws**
**§ 3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the subcontractor permits/fees as well as for subcontractor inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

**§ 3.7.4 Concealed or Unknown Conditions**
If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 14 days after first observance of the conditions. The Record Architect will promptly investigate such conditions and, if the Record Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend that an equitable adjustment be made in the Contract Sum or Contract Time, or both. If the Record Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Record Architect shall promptly notify the Owner and Contractor, stating the reasons. If either party disputes the Record Architect's determination or recommendation, that party may submit a Claim as provided in Article 15.

**§ 3.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as a written Change Order for additional cost or time as provided in the Contract Documents.


AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**§ 3.8 Allowances**
**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. objection.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,

.1 allowances shall cover the cost to the Contractor of materials, equipment delivered at the site, unloading and handling at the site, labor, fabricatiob, installation costs, freight, subcontract/supplier overhead & profit, and all required taxes, less applicable trade discounts;

.2 Contractor's costs for overhead andprofit for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and

.3 whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

*(Paragraph deleted)*
**§ 3.9 Superintendent**
**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor, as soon as practicable after award of the Contract, shall notify the Owner and Architect of the name and qualifications of a proposed superintendent.

**§ 3.9.3** . The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.

**§ 3.10 Contractor's Construction and Submittal Schedules**
**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall contain detail appropriate for the Project, including (1) the date of commencement of the Work, interim schedule milestone dates, and the date of Substantial Completion; (2) an apportionment of the Work by construction activity; and (3) the time required for completion of each portion of the Work. The schedule shall provide for the orderly progression of the Work to completion and shall not exceed time limits current under the Contract Documents. The schedule shall be revised at appropriate intervals as required by the conditions of the Work and Project.

**§ 3.10.2** The Contractor, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, shall submit a submittal schedule for the Architect's approval. The Architect's approval shall not be unreasonably delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, or fails to provide submittals in accordance with the approved submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

**§ 3.11 Documents and Samples at the Site**
The Contractor shall make available, at the Project site, the Contract Documents, including Change Orders, Construction Change Directives, and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and the approved Shop Drawings, Product Data, Samples, and similar required submittals. These shall be in electronic form or paper copy, available to the Architect and Owner, and delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.

Init.
MH /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

(1198346052)

**§ 3.12 Shop Drawings, Product Data and Samples**

**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules, and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier, or distributor to illustrate some portion of the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams, and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples that illustrate materials, equipment, or workmanship, and establish standards by which the Work will be judged.

**§ 3.12.4** Shop Drawings, Product Data, Samples, and similar submittals are not Contract Documents. Their purpose is to demonstrate how the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve, and submit to the Architect, Shop Drawings, Product Data, Samples, and similar submittals required by the Contract Documents, in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of Separate Contractors.

**§ 3.12.6** By submitting Shop Drawings, Product Data, Samples, and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples, or similar submittals, until the respective submittal has been approved by the Architect.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from the requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples, or similar submittals, unless the Contractor has specifically notified the Architect of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples, or similar submittals, by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples, or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such notice, the Architect's approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences, and procedures. The Contractor shall not be required to provide professional services in violation of applicable law.

**§ 3.12.10.1** If professional design services or certifications by a design professional related to systems, materials, or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall be entitled to rely upon the adequacy and accuracy of the performance and design criteria provided in the Contract Documents. The Contractor shall cause such services or certifications to be provided by an appropriately licensed design professional,



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings, and other submittals prepared by such professional. Shop Drawings, and other submittals related to the Work, designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy and accuracy of the services, certifications, and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor the performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review and approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.

**§ 3.12.10.2** If the Contract Documents require the Contractor's design professional to certify that the Work has been performed in accordance with the design criteria, the Contractor shall furnish such certifications to the Architect at the time and in the form specified by the Architect.

**§ 3.13 Use of Site**
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, lawful orders of public authorities, and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**§ 3.14 Cutting and Patching**
**§ 3.14.1** The Contractor shall be responsible for cutting, fitting, or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting, or patching shall be restored to the condition existing prior to the cutting, fitting, or patching, unless otherwise required by the Contract Documents.

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or Separate Contractors by cutting, patching, or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter construction by the Owner or a Separate Contractor except with written consent of the Owner and of the Separate Contractor. Consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold, from the Owner or a Separate Contractor, its consent to cutting or otherwise altering the Work.

**§ 3.15 Cleaning Up; ownership of surplus materials**
**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials and rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery, and surplus materials from and about the Project.., Nothwithstanding anything to the contrary, all surplus finish materials from the Project (including without limitation tile, flooring, electrical and plumbing fixtures, millwork) that are paid for from the Contract Sum or provided by Owner shall be the property of Owner, unless Owner agrees otherwise in writing; the parties confirm that the foregoing shall not apply to fixed price subcontractors who bring surplus material onto the site, such as drywall contractors. .

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the Owner shall be entitled to reimbursement from the Contractor.

**§ 3.16 Access to Work**
The Contractor shall provide the Owner and Architect with access to the Work in preparation and progress wherever located.

**§ 3.17 Royalties, Patents and Copyrights**
The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for defense or loss when a particular design, process, or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications, or other documents prepared by the Owner or Architect. However, if an infringement of a copyright or patent is discovered by, or made known to, the Contractor, the Contractor shall be responsible for the loss unless the information is promptly furnished to the Architect.

Init.
MH /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

(1198346052)

**§ 3.18 Indemnification**
**§ 3.18.1** To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, the Owner's lenders and their respective consultants, general and limited partners, officers, directors, shareholders and affiliated companies, the Architect, the Record Architect, Architect's consultants, Record Architect consultants, and agents and employees of any of them (the "Indemnified Parties" and each, an "Indemnified Party") from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees and expert witness fees ("Claims"), to the extent arising out of or resulting from performance of the Work, to the extent caused by the negligent, reckless, or intentional wrongful acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.18.1. Nothing herein shall be construed to require Contractor to indemnify an Indemnified Party for Claims to the extent caused by the Indemnified Party's own negligence. It is agreed that with respect to any legal limitations under the law of the jurisdiction in which the Project is located now or hereafter in effect and affecting the validity and enforceability of the indemnification obligation under this Section 3.18.1, such legal limitations are made a part of the indemnification obligation to the minimum extent necessary to bring Section 3.18.1 into conformity with the requirements of such limitations, and as so modified, the indemnification obligation shall continue in full force and effect. The obligations in Section 3.18.1 survive the completion of the Work or the expiration or termination of this Contract.

**§ 3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation, or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

**ARTICLE 4 ARCHITECT and RECORD ARCHITECT**
**§ 4.1 General**
**§ 4.1.1** The Architect and Record Architect is the person or entity retained by the Owner pursuant to Section 2.3.2 and identified as such in the Agreement.

**§ 4.1.2** Duties, responsibilities, and limitations of authority of the Architect and Record Architect as set forth in the Contract Documents shall not be restricted, modified, or extended without written consent of the Owner, Contractor, Architect, and Record Architect. Consent shall not be unreasonably withheld.

**§ 4.2 Administration of the Contract**
**§ 4.2.1** Except where the Contract Documents specify that action by the Record Architect is required, the Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Record Architect issues the final Certificate for Payment. The Architect and Record Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

**§ 4.2.2** The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents.

**§ 4.2.3** On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and promptly report to the Owner (1) known deviations from the Contract Documents, (2) known deviations from the most recent construction schedule submitted by the Contractor, and (3) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not

Init.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

have control over or charge of, and will not be responsible for acts or omissions of, the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**§ 4.2.4 Communications**
The Owner and Contractor shall include the Architect in all communications that relate to or affect the Architect's services or professional responsibilities. The Owner shall promptly notify the Architect of the substance of any direct communications between the Owner and the Contractor otherwise relating to the Project. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and suppliers shall be through the Contractor. Communications by and with Separate Contractors shall be through the Owner. The Contract Documents may specify other communication protocols.

**§ 4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**§ 4.2.6** The Record Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Record Architect considers it necessary or advisable, the Record Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.4.2 and 13.4.3, whether or not the Work is fabricated, installed or completed. However, neither this authority of the Record Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Record Architect to the Contractor, Subcontractors, suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**§ 4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data, and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5, and 3.12. The Architect's review shall not constitute approval of safety precautions or of any construction means, methods, techniques, sequences, or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The Architect will prepare Construction Change Directives, and may order minor changes in the Work as provided in Section 7.4 , both requiring the agreement of Contractor (not to be unreasonably withheld) and the Contractor will prepare Change Orders.The Record Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

**§ 4.2.9** The Record Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

**§ 4.2.10** If the Owner and Architect agree, the Architect or Record Architect, or both, will provide one or more Project representatives to assist in carrying out the Architect's responsibilities at the site. The Owner shall notify the Contractor of any change in the duties, responsibilities and limitations of authority of the Project representatives.

**§ 4.2.11** The Record Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Record Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**§ 4.2.12** Interpretations and decisions of the Record Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Record Architect will endeavor to secure faithful performance by both Owner and


AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

Contractor, will not show partiality to either, and will not be liable for results of interpretations or decisions rendered in good faith.

**§ 4.2.13** The Architect and Record Architect shall be the representative of the Owner and shall have authority to act on behalf of the Owner only to the extent specifically so provided in this Contract. The Architect and Record Architect shall not be a general agent of the Owner and shall have no authority to act on behalf of the Owner, except as provided in this Contract or otherwise agreed in writing by the Owner. Specifically, the Architect and Record Architect has no authority to increase the Contract Sum, extend the Contract Time or change the scope of the Work (except and only for minor changes pursuant to Section 7.4.1). Such actions can only be directed by the Owner in a signed Change Order or Construction Change Directive...

**§ 4.2.14** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

## ARTICLE 5 SUBCONTRACTORS

**§ 5.1 Definitions**

**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a Separate Contractor or the subcontractors of a Separate Contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

**§ 5.2 Award of Subcontracts and Other Contracts for Portions of the Work**

**§ 5.2.1** Unless otherwise stated in the Contract Documents, the Contractor, as soon as practicable after award of the Contract, shall notify the Owner and Architect of the persons or entities proposed for each principal portion of the Work, including those who are to furnish materials or equipment fabricated to a special design. Within 14 days of receipt of the information, the Architect may notify the Contractor whether the Owner or the Architect (1) has reasonable objection to any such proposed person or entity or (2) requires additional time for review. Failure of the Architect to provide notice within the 14-day period shall constitute notice of no reasonable objection.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not substitute a Subcontractor, person, or entity for one previously selected if the Owner or Architect makes reasonable objection to such substitution.

**§ 5.3 Subcontractual Relations**

By appropriate written agreement, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work that the Contractor, by these Contract Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not


AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies, and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§ 5.4 Contingent Assignment of Subcontracts**
**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that

.1 assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor;

When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

**§ 5.4.2** Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

**§ 5.4.3** Upon assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

## ARTICLE 6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

**§ 6.1 Owner's Right to Perform Construction and to Award Separate Contracts**
**§ 6.1.1** The term "Separate Contractor(s)" shall mean other contractors retained by the Owner under separate agreements. The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and with Separate Contractors retained under Conditions of the Contract substantially similar to those of this Contract, including those provisions of the Conditions of the Contract related to insurance and waiver of subrogation.

**§ 6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**§ 6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each Separate Contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with any Separate Contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to its construction schedule deemed necessary after a joint review and mutual agreement with Owner . The construction schedules shall then constitute the schedules to be used by the Contractor, Separate Contractors, and the Owner until subsequently revised.

**§ 6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces or with Separate Contractors, the Owner or its Separate Contractors shall have the same obligations and rights that the Contractor has under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6, and Articles 10, 11, and 12.

**§ 6.2 Mutual Responsibility**
**§ 6.2.1** The Contractor shall afford the Owner and Separate Contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**§ 6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a Separate Contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly notify the Record Architect of apparent discrepancies or defects in the construction or operations by the Owner or Separate Contractor that would render it unsuitable for proper execution and results of the Contractor's Work. Failure of the Contractor to notify the Record Architect of apparent discrepancies or defects prior to proceeding with the Work shall constitute an acknowledgment that the Owner's or Separate Contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work. The Contractor shall not be responsible for discrepancies or defects in the construction or operations by the Owner or Separate Contractor that are not apparent.

**§ 6.2.3** The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a Separate Contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a Separate Contractor's delays, improperly timed activities, damage to the Work or defective construction.

**§ 6.2.4** The Contractor shall promptly remedy damage that the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or Separate Contractor as provided in Section 10.2.5.

**§ 6.2.5** The Owner and each Separate Contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

**§ 6.3 Owner's Right to Clean Up**
If a dispute arises among the Contractor, Separate Contractors, and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Record Architect will allocate the cost among those responsible.

## ARTICLE 7 CHANGES IN THE WORK

**§ 7.1 General**
**§ 7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, only by the prior written consent of the Owner pursuant to a valid Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**§ 7.1.2** A Change Order shall be based upon written agreement among the Owner andContractor. A Construction Change Directive requires written agreement by the Owner and Contractor. . An order for a minor change in the Work may be issued by the Architect, but subject to the agreement of Contractor (not to be unreasonably withheld).

**§ 7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents. The Contractor shall proceed promptly with changes in the Work, unless otherwise provided in the Change Order, Construction Change Directive, or order for a minor change in the Work.

**§ 7.2 Change Orders**
**§ 7.2.1** A Change Order is a written instrument prepared by the Contractor and signed by the Owner and Contractorstating their agreement upon all of the following:

.1 The change in the Work;
.2 The amount of the adjustment, if any, in the Contract Sum; and
.3 The extent of the adjustment, if any, in the Contract Time.

**§ 7.3 Construction Change Directives**
**§ 7.3.1** A Construction Change Directive is a written order signed by the Owner and Contractor directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions, or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**§ 7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum and Contract Time, the adjustment shall be based on one of the following methods:

**.1** Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

**.3** Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

**.4** As provided in Section 7.3.4.

**§ 7.3.4** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum or Contract Time, the Record Architect shall determine the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Record Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.4 shall be limited to the following:

**.1** Costs of labor, including applicable payroll taxes, fringe benefits required by agreement or custom, workers' compensation insurance, and other employee costs approved by the Record Architect;

**.2** Costs of materials, supplies, and equipment, including cost of transportation, whether incorporated or consumed;

**.3** Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

**.4** Costs of premiums for all insurance, permit fees, and sales, use, or similar taxes, directly related to the change; and

**.5** Costs of supervision and field office personnel directly attributable to the change.

**.6** **Contractor's Overhead & Profit.**

**§ 7.3.5** If the Contractor disagrees with the adjustment in the Contract Time, the Contractor may make a Claim in accordance with applicable provisions of Article 15.

**§ 7.3.6** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved.

**§ 7.3.7** A Construction Change Directive signed by the Contractor and Owner indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Record Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Record Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Record Architect determines, in the Record Architect's professional judgment, to be reasonably justified. The Record Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Owner and Contractor agree with a determination made by the Record Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Contractor will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 7.4 Minor Changes in the Work**
TheArchitect may order minor changes in the Work that are consistent with the intent of the Contract Documents and do not involve an adjustment in the Contract Sum or an extension of the Contract Time, subject to the agreement of Contractor (not to be unreasonably withheld). The Architect's order for minor changes shall be in writing. If the Contractor believes that the proposed minor change in the Work will affect the Contract Sum or Contract Time, the Contractor shall notify the Architect and shall not proceed to implement the change in the Work. If the Contractor performs the Work set forth in the Architect's order for a minor change without prior notice to the Architect that such change will affect the Contract Sum or Contract Time, the Contractor waives any adjustment to the Contract Sum or extension of the Contract Time.

**ARTICLE 8 TIME**
**§ 8.1 Definitions**
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Record Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

**§ 8.2 Progress and Completion**
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement, the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, commence the Work prior to the effective date of insurance required to be furnished by the Contractor and Owner.

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

**§ 8.3 Delays and Extensions of Time**
**§ 8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by (1) an act or neglect of the Owner or Architect, of an employee of either, or of a Separate Contractor; (2) by changes ordered in the Work; (3) by labor disputes, fire, unusual delay in deliveries, unavoidable casualties, adverse weather conditions documented in accordance with Section 15.1.6.2, or other causes beyond the Contractor's control; (4) by delay authorized by the Owner pending mediation and binding dispute resolution; or (5) by other causes that the Contractor asserts, and the Record Architect determines, justify delay, then the Contract Time shall be extended for such reasonable time as the Record Architect may determine.

**§ 8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Article 15.

**§ 8.3.3** This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

**ARTICLE 9 PAYMENTS AND COMPLETION**
**§ 9.1 Contract Sum**
**§ 9.1.1** The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

*(Paragraph deleted)*
**§ 9.1.1.1** The Contractor shall receive no compensation for any costs incurred by the Contractor in repairing or correcting, or supervising the correction or repair, of defective or non-conforming Work performed or supplied by any Subcontractor, material supplier, or any other person or entity employed by or under contract with behalf of the Contractor, regardless of whether or not such defective or non-conforming Work resulted from the fault or neglect of

Init.
MH /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

the Contractor or the Contractor's personnel and the Contractor's sole remedy with respect to the recovery of any such costs shall be whatever remedies are contained in the Contractor's agreements with its Subcontractors, suppliers and other persons or entities providing Work on the Project.

**§ 9.2 Schedule of Values**
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit a schedule of values to the Architect before the first Application for Payment, allocating the entire Contract Sum to the various portions of the Work. The schedule of values shall be prepared in the form, and supported by the data to substantiate its accuracy, required by the Architect. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment. Any changes to the schedule of values shall be submitted to the Architect and supported by such data to substantiate its accuracy as the Architect may require, and unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's subsequent Applications for Payment.

**§ 9.3 Applications for Payment**
**§ 9.3.1** The Contractor shall submit a preliminary draft of the Application for Payment (hereinafter referred to as a "Pencil Draw") prepared by the Contractor not later than the 25th of each month. The Pencil draw shall conform to the requirements of the disbursing agreement (the "Disbursing Agreement') and the Contract Documents. The Contractor shall revise the Pencil Draw (within three (3) days after meeting/discussing with Owner/Owner's Representative) in accordance with any reasonable objection or recommendation of the Owner that is consistent with the requirements of the Contract Documents. The Contractor shall resubmit such revised Pencil Draw as the Application for Payment. The Contractor shall submit to the Owner and Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2, for completed portions of the Work. The application shall be notarized, if required, and supported by all data substantiating the Contractor's right to payment that the Owner or Architect require, such as copies of requisitions, and conditional releases and waivers of liens from Subcontractors and suppliers, and shall reflect retainage if provided for in the Contract Documents.

**§ 9.3.1.1** As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Record Architect, but not yet included in Change Orders.

**§ 9.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or supplier, unless such Work has been performed by others whom the Contractor intends to pay. Each Application for Payment submitted by the Contractor shall be accompanied by a partial waiver of lien executed by the Contractor covering the entire amount of the payment requested by the relevant Application for Payment.

**§ 9.3.1.3** Contractor shall promptly discharge or cause to be discharged to make adequate provision for discharge of any and all mechanics and materialmen liens filed by any third party in connection with the Work, provided Owner has paid amounts due Contractor in connection with the Work that is the subject of any such lien.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage, and transportation to the site, for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information, and belief, be free and clear of liens, claims, security interests, or encumbrances, in favor of the Contractor, Subcontractors, suppliers, or other persons or entities that provided labor, materials, and equipment relating to the Work.


AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**§ 9.4 Certificates for Payment**

**§ 9.4.1** The Record Architect will, within seven days after receipt of the Contractor's Application for Payment, either (1) issue to the Owner a Certificate for Payment in the full amount of the Application for Payment, with a copy to the Contractor; or (2) issue to the Owner a Certificate for Payment for such amount as the Record Architect determines is properly due, and notify the Contractor and Owner of the Record Architect's reasons for withholding certification in part as provided in Section 9.5.1; or (3) withhold certification of the entire Application for Payment, and notify the Contractor and Owner of the Record Architect's reason for withholding certification in whole as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Record Architect to the Owner, based on the Record Architect's evaluation of the Work and the data in the Application for Payment, that, to the best of the Record Architect's knowledge, information, and belief, the Work has progressed to the point indicated, the quality of the Work is in accordance with the Contract Documents, and that the Contractor is entitled to payment in the amount certified. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion, and to specific qualifications expressed by the Record Architect. However, the issuance of a Certificate for Payment will not be a representation that the Record Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work; (2) reviewed construction means, methods, techniques, sequences, or procedures; (3) reviewed copies of requisitions received from Subcontractors and suppliers and other data requested by the Owner to substantiate the Contractor's right to payment; or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**§ 9.5 Decisions to Withhold Certification**

**§ 9.5.1** The Record Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Record Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Record Architect is unable to certify payment in the amount of the Application, the Record Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Record Architect cannot agree on a revised amount, the Record Architect will promptly issue a Certificate for Payment for the amount for which the Record Architect is able to make such representations to the Owner. The Record Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Record Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of

- **.1** defective Work not remedied;
- **.2** third party claims filed or reasonable evidence indicating probable filing of such claims, unless security acceptable to the Owner is provided by the Contractor;
- **.3** failure of the Contractor to make payments properly to Subcontractors or suppliers for labor, materials or equipment;
- **.4** reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
- **.5** damage to the Owner or a Separate Contractor;
- **.6** reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
- **.7** Contractor's failure to carry out the Work in accordance with the Contract Documents.

**§ 9.5.2** When either party disputes the Record Architect's decision regarding a Certificate for Payment under Section 9.5.1, in whole or in part, that party may submit a Claim in accordance with Article 15.

**§ 9.5.3** When the reasons for withholding certification are removed, certification will be made for amounts previously withheld as part of the next regularly scheduled application for payment.

**§ 9.5.4** If the Record Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or supplier to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Record Architect and the Contractor shall reflect such payment on its next Application for Payment.



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**§ 9.6 Progress Payments**
**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall pay each Subcontractor, no later than seven days after receipt of payment from the Owner, the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors and suppliers to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay, or to see to the payment of money to, a Subcontractor or supplier, except as may otherwise be required by law.

**§ 9.6.5** The Contractor's payments to suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Payments received by the Contractor for Work properly performed by Subcontractors or provided by suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, create any fiduciary liability or tort liability on the part of the Contractor for breach of trust, or entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

**§ 9.6.8** Provided the Owner has fulfilled its payment obligations under the Contract Documents, the Contractor shall defend and indemnify the Owner from all loss, liability, damage or expense, including reasonable attorney's fees and litigation expenses, arising out of any lien claim or other claim for payment by any Subcontractor or supplier of any tier. Upon receipt of notice of a lien claim or other claim for payment, the Owner shall notify the Contractor. If approved by the applicable court, when required, the Contractor may substitute a surety bond for the property against which the lien or other claim for payment has been asserted.

**§ 9.7 Failure of Payment**
If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents, the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shutdown, delay and start-up, plus interest as provided for in the Contract Documents.

**§ 9.8 Substantial Completion**
**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of

Init.
MH

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

(1198346052)

items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's list, the Record Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Record Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Record Architect. In such case, the Contractor shall then submit a request for another inspection by the Record Architect to determine Substantial Completion.

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Record Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion; establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance; and fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in the Certificate. Upon such acceptance, the Owner shall make payment of retainage applying to the Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

**§ 9.9 Partial Occupancy or Use**

**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Record Architect.

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor, and Record Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

**§ 9.10 Final Completion and Final Payment**

**§ 9.10.1** Upon receipt of the Contractor's notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Record Architect will promptly make such inspection. When the Record Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Record Architect will promptly issue a final Certificate for Payment stating that to the best of the Record Architect's knowledge, information and belief, and on the basis of the Record Architect's on-site visits and inspections, the Work has been completed in accordance with the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Record Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner)



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect, (3) a written statement that the Contractor knows of no reason that the insurance will not be renewable to cover the period required by the Contract Documents, (5) documentation of any special warranties, such as manufacturers' warranties or specific Subcontractor warranties, and (6) if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts and releases and waivers of liens, claims, security interests, or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien, claim, security interest, or encumbrance. If a lien, claim, security interest, or encumbrance remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging the lien, claim, security interest, or encumbrance, including all costs and reasonable attorneys' fees.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Record Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Record Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed, corrected, and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, the written consent to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Record Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of Claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from

- **.1** liens, Claims, security interests, or encumbrances arising out of the Contract and unsettled;
- **.2** failure of the Work to comply with the requirements of the Contract Documents;
- **.3** terms of special warranties required by the Contract Documents; or
- **.4** audits performed by the Owner, if permitted by the Contract Documents, after final payment.

**§ 9.10.5** Acceptance of final payment by the Contractor, a Subcontractor, or a supplier, shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10 PROTECTION OF PERSONS AND PROPERTY

### § 10.1 Safety Precautions and Programs

The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract.

### § 10.2 Safety of Persons and Property

**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury, or loss to

- **.1** employees on the Work and other persons who may be affected thereby;
- **.2** the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody, or control of the Contractor, a Subcontractor, or a Sub-subcontractor; and
- **.3** other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures, and utilities not designated for removal, relocation, or replacement in the course of construction.

**§ 10.2.2** The Contractor shall comply with, and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities, bearing on safety of persons or property or their protection from damage, injury, or loss.

**§ 10.2.3** The Contractor shall implement, erect, and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards; promulgating safety regulations; and notifying the owners and users of adjacent sites and utilities of the safeguards.



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment, or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**§ 10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3. The Contractor may make a Claim for the cost to remedy the damage or loss to the extent such damage or loss is attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

**§ 10.2.8 Injury or Damage to Person or Property**
If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, notice of the injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 calendar days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**§ 10.3 Hazardous Materials and Substances**
**§ 10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials or substances. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and notify the Owner and Architect of the condition.

**§ 10.3.2** Upon receipt of the Contractor's notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of the material or substance or who are to perform the task of removal or safe containment of the material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable additional costs of shutdown, delay, and start-up.

**§ 10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss, or expense is due to the fault or negligence of the party seeking indemnity.

Init.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 10.3.4** The Owner shall not be responsible under this Section 10.3 for hazardous materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for hazardous materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

**§ 10.3.5** The Contractor shall reimburse the Owner for the cost and expense the Owner incurs (1) for remediation of hazardous materials or substances the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

**§ 10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall reimburse the Contractor for all cost and expense thereby incurred.

**§ 10.4 Emergencies**
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury, or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

**ARTICLE 11 INSURANCE**
**§ 11.1 Contractor's Insurance**
**§ 11.1.1** The Contractor shall purchase and maintain insurance of the types and limits of liability, containing the endorsements, and subject to the terms and conditions, as described in the Agreement or elsewhere in the Contract Documents. The Contractor shall purchase and maintain the required insurance from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located. The Owner, Architect, and Architect's consultants shall be named as additional insureds under the Contractor's commercial general liability policy or as otherwise described in the Contract Documents.

*(Paragraphs deleted)*
**§ 11.1.4 Notice of Cancellation or Expiration of Contractor's Required Insurance.** Within three (3) business days of the date the Contractor becomes aware of an impending or actual cancellation or expiration of any insurance required by the Contract Documents, the Contractor shall provide notice to the Owner of such impending or actual cancellation or expiration. Upon receipt of notice from the Contractor, the Owner shall, unless the lapse in coverage arises from an act or omission of the Owner, have the right to stop the Work until the lapse in coverage has been cured by the procurement of replacement coverage by the Contractor. The furnishing of notice by the Contractor shall not relieve the Contractor of any contractual obligation to provide any required coverage.

**§ 11.2 Owner's Insurance**
**§ 11.2.1** The Owner shall purchase and maintain insurance of the types and limits of liability, containing the endorsements, and subject to the terms and conditions, as described in the Agreement or elsewhere in the Contract Documents. The Owner shall purchase and maintain the required insurance from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located.

**§ 11.2.2 Failure to Purchase Required Property Insurance.** If the Owner fails to purchase and maintain the required property insurance, with all of the coverages and in the amounts described in the Agreement or elsewhere in the Contract Documents, the Owner shall inform the Contractor in writing prior to commencement of the Work. Upon receipt of notice from the Owner, the Contractor may delay commencement of the Work. When the failure to provide coverage has been cured or resolved by Owner, the Contract Sum and Contract Time shall be equitably adjusted. In the event the Owner fails to procure coverage, the Owner waives all rights against the Contractor, Subcontractors, and Sub-subcontractors to the extent the loss to the Owner would have been covered by the insurance to have been procured by the Owner. If the Owner does not provide written notice, and the Contractor is damaged by the failure or



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

neglect of the Owner to purchase or maintain the required insurance, the Owner shall reimburse the Contractor for all reasonable costs and damages attributable thereto.

**§ 11.2.3 Notice of Cancellation or Expiration of Owner's Required Property Insurance.** Within three (3) business days of the date the Owner becomes aware of an impending or actual cancellation or expiration of any property insurance required by the Contract Documents, the Owner shall provide notice to the Contractor of such impending or actual cancellation or expiration. Unless the lapse in coverage arises from an act or omission of the Contractor: (1) the Contractor, upon receipt of notice from the Owner, shall have the right to stop the Work until the lapse in coverage has been cured by the procurement of replacement coverage by the Owner ; (2) the Contract Time and Contract Sum shall be equitably adjusted; and (3) the Owner waives all rights against the Contractor, Subcontractors, and Sub-subcontractors to the extent any loss to the Owner would have been covered by the insurance had it not expired or been cancelled. . The furnishing of notice by the Owner shall not relieve the Owner of any contractual obligation to provide required insurance.

**§ 11.3 Waivers of Subrogation**

**§ 11.3.1** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents, and employees, each of the other; (2) the Architect and Architect's consultants; and (3) Separate Contractors, if any, and any of their subcontractors, sub-subcontractors, agents, and employees, for damages caused by fire, or other causes of loss, to the extent those losses are covered by property insurance required by the Agreement or other property insurance applicable to the Project, except such rights as they have to proceeds of such insurance. The Owner or Contractor, as appropriate, shall require similar written waivers in favor of the individuals and entities identified above from the Architect, Architect's consultants, Separate Contractors, subcontractors, and sub-subcontractors. The policies of insurance purchased and maintained by each person or entity agreeing to waive claims pursuant to this section 11.3.1 shall not prohibit this waiver of subrogation. This waiver of subrogation shall be effective as to a person or entity (1) even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, (2) even though that person or entity did not pay the insurance premium directly or indirectly, or (3) whether or not the person or entity had an insurable interest in the damaged property. Notwithstanding the other terms of this Section 11.3.1, even if the cost of repair to the property or the Project is covered by Owner's insurance, Contractor shall be responsible, at its cost, to repair any damage caused by Contractor, its subcontractors, employees or agents, if the cost of such repair is less than the greater of a) $10,000, or b) the deducible under such property insurance.

**§ 11.3.2** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, to the extent permissible by such policies, the Owner waives all rights in accordance with the terms of Section 11.3.1 for damages caused by fire or other causes of loss covered by this separate property insurance.

**§ 11.4 Loss of Use, Business Interruption, and Delay in Completion Insurance**

The Owner, at the Owner's option, may purchase and maintain insurance that will protect the Owner against loss of use of the Owner's property, or the inability to conduct normal operations, due to fire or other causes of loss. The Owner waives all rights of action against the Contractor and Architect for loss of use of the Owner's property, due to fire or other hazards however caused.

**§11.5 Adjustment and Settlement of Insured Loss**

**§ 11.5.1** A loss insured under the property insurance required by the Agreement shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.5.2. The Owner shall pay the Architect and Contractor their just shares of insurance proceeds received by the Owner, and by appropriate agreements the Architect and Contractor shall make payments to their consultants and Subcontractors in similar manner.

**§ 11.5.2** Prior to settlement of an insured loss, the Owner shall notify the Contractor of the terms of the proposed settlement as well as the proposed allocation of the insurance proceeds. The Contractor shall have 14 days from receipt of notice to object to the proposed settlement or allocation of the proceeds. If the Contractor does not object, the Owner shall settle the loss and the Contractor shall be bound by the settlement and allocation. Upon receipt, the Owner shall deposit the insurance proceeds in a separate account and make the appropriate distributions. Thereafter, if no

Init.
mk /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

other agreement is made or the Owner does not terminate the Contract for convenience, the Owner and Contractor shall execute a Change Order for reconstruction of the damaged or destroyed Work in the amount allocated for that purpose. If the Contractor timely objects to either the terms of the proposed settlement or the allocation of the proceeds, the Owner may proceed to settle the insured loss, and any dispute between the Owner and Contractor arising out of the settlement or allocation of the proceeds shall be resolved pursuant to Article 15. Pending resolution of any dispute, the Owner may issue a Construction Change Directive for the reconstruction of the damaged or destroyed Work.

## ARTICLE 12 UNCOVERING AND CORRECTION OF WORK

**§ 12.1 Uncovering of Work**

**§ 12.1.1** If a portion of the Work is covered contrary to the Record Architect's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Record Architect, be uncovered for the Record Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, the Contractor shall be entitled to an equitable adjustment to the Contract Sum and Contract Time as may be appropriate. If such Work is not in accordance with the Contract Documents, the costs of uncovering the Work, and the cost of correction, shall be at the Contractor's expense.

**§ 12.2 Correction of Work**

**§ 12.2.1 Before Substantial Completion**

The Contractor shall promptly correct Work rejected by the Record Architect or failing to conform to the requirements of the Contract Documents, discovered before Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and expenses made necessary thereby, shall be at the Contractor's expense.

**§ 12.2.2 After Substantial Completion**

**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of any applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of notice from the Owner to do so, unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Record Architect, the Owner may correct it in accordance with Section 2.5.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction of the Owner or Separate Contractors, whether completed or partially completed, caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

**§ 12.3 Acceptance of Nonconforming Work**
If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as agreed to by Owner and Contractor. Such adjustment shall be effected whether or not final payment has been made.

**ARTICLE 13 MISCELLANEOUS PROVISIONS**
**§ 13.1 Governing Law**
The Contract shall be governed by the law of the place where the Project is located, excluding that jurisdiction's choice of law rules. If the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.

**§ 13.2 Successors and Assigns**
**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns, and legal representatives to covenants, agreements, and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, assign the Contract to (i) any affiliate or successor in interest, specifically including but not limited to Gulfstream Owner LLC., or (ii) a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate the assignment.

**§ 13.3 Rights and Remedies**
**§ 13.3.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights, and remedies otherwise imposed or available by law.

**§ 13.3.2** No action or failure to act by the Owner, Architect, or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed upon in writing.

**§ 13.4 Tests and Inspections**
**§ 13.4.1** Tests, inspections, and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules, and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections, and approvals with an independent testing laboratory or entity as provided and paid for by the the Owner, or with the appropriate public authority.. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. . The Owner shall directly arrange and pay for tests, inspections, or approvals where building codes or applicable laws or regulations so require.

**§ 13.4.2** If the Record Architect, Owner, or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection, or approval not included under Section 13.4.1, the Record Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection, or approval, by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Record Architect of when and where tests and inspections are to be made so that the Record Architect may be present for such procedures. Such costs, except as provided in Section 13.4.3, shall be at the Owner's expense.

**§ 13.4.3** If procedures for testing, inspection, or approval under Sections 13.4.1 and 13.4.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure, including those of repeated procedures and compensation for the Record Architect's services and expenses, shall be at the Contractor's expense.



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 13.4.4** Required certificates of testing, inspection, or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**§ 13.4.5** If the Architect is to observe tests, inspections, or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**§ 13.4.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

**§ 13.5 Interest**
Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate the parties agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

## ARTICLE 14 TERMINATION OR SUSPENSION OF THE CONTRACT

**§ 14.1 Termination by the Contractor**
**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, their agents or employees, or any other persons or entities performing portions of the Work, for any of the following reasons:

- **.1** Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;
- **.2** An act of government, such as a declaration of national emergency, that requires all Work to be stopped;
- **.3** Because the Record Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or
- **.4** The Owner has failed to furnish to the Contractor reasonable evidence as required by Section 2.2.

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, their agents or employees, or any other persons or entities performing portions of the Work, repeated suspensions, delays, or interruptions of the entire Work by the Owner as described in Section 14.3, constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' notice to the Owner and Record Architect, terminate the Contract and recover from the Owner payment for Work executed, as well as reasonable overhead and profit on Work not executed, and costs incurred by reason of such termination.

**§ 14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, or their agents or employees or any other persons or entities performing portions of the Work because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' notice to the Owner and the Record Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

**§ 14.2 Termination by the Owner for Cause**
**§ 14.2.1** The Owner may terminate the Contract if the Contractor

- **.1** repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
- **.2** fails to make payment to Subcontractors or suppliers in accordance with the respective agreements between the Contractor and the Subcontractors or suppliers;
- **.3** repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or
- **.4** otherwise is guilty of substantial breach of a provision of the Contract Documents.


AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

**§ 14.2.2** When any of the reasons described in Section 14.2.1 exist, and upon certification by the Record Architect that sufficient cause exists to justify such action, the Owner may, without prejudice to any other rights or remedies of the Owner and after giving the Contractor , if any, seven days' notice, terminate employment of the Contractor and may:

**.1** Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

**.2** Accept assignment of subcontracts pursuant to Section 5.4; and

**.3** Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

*(Paragraphs deleted)*

**§ 14.4 Termination by the Owner for Convenience**

**§ 14.4.1** The Owner may, prior to issuing the Notice to Proceed to Contractor, terminate the Contract for the Owner's convenience if Owner is unable to obtain its full financing, or Owner suspends or terminates the Project for reasonable cause (whether or not related to Contractor's actions).

**§ 14.4.2** Upon receipt of notice from the Owner of such termination for the Owner's convenience, the Contractor shall

**.1** cease operations as directed by the Owner in the notice;

**.2** take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

**.3** except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**§ 14.4.3** In case of such termination for the Owner's convenience, the Owner shall pay the Contractor for Work properly executed; costs incurred by reason of the termination, including costs attributable to termination of Subcontracts; and the termination fee, if any, set forth in the Agreement.

**ARTICLE 15 CLAIMS AND DISPUTES**

**§ 15.1 Claims**

**§ 15.1.1 Definition**

A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, a change in the Contract Time, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim. This Section 15.1.1 does not require the Owner to file a Claim in order to impose liquidated damages in accordance with the Contract Documents.

**§ 15.1.2 Time Limits on Claims**

The Owner and Contractor shall commence all Claims and causes of action against the other and arising out of or related to the Contract, whether in contract, tort, breach of warranty or otherwise, in accordance with the requirements of the binding dispute resolution method selected in the Agreement and within the period specified by applicable law


AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

after the date of Substantial Completion of the Work. The Owner and Contractor waive all Claims and causes of action not commenced in accordance with this Section 15.1.2.

**§ 15.1.3 Notice of Claims**
**§ 15.1.3.1** Claims by either the Owner or Contractor, where the condition giving rise to the Claim is first discovered prior to expiration of the period for correction of the Work set forth in Section 12.2.2, shall be initiated by notice to the other party and to the Initial Decision Maker with a copy sent to the Record Architect, if the Record Architect is not serving as the Initial Decision Maker. Claims by either party under this Section 15.1.3.1 shall be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Notwithstanding any other provision of this Contract, the failure of the Contractor to provide the Owner with written notice of any Claim (including but not limited to any Claims seeking any increase in the Contract Sum or an extension of the Contract Time or other damages or costs of any kind) within the applicable time frame established by this section (or such earlier time as may be established elsewhere in the Contract Documents) shall mean that the Contractor has waived such Claim and shall perform all Work required by or in connection with any occurrence or condition giving rise to the Claim without increase in the Contract Sum or extension of the Contract Time.

**§ 15.1.3.2** Claims by either the Owner or Contractor, where the condition giving rise to the Claim is first discovered after expiration of the period for correction of the Work set forth in Section 12.2.2, shall be initiated by notice to the other party. In such event, no decision by the Initial Decision Maker is required.

**§ 15.1.4 Continuing Contract Performance**
**§ 15.1.4.1** Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. The Contractor expressly agrees that the Owner has no adequate remedy at law should the Contractor fail to comply with the requirements of this Section 15.1.4.1. In such event, the Owner shall be entitled to an injunction from any court of competent jurisdiction enforcing said provisions and requiring Contractor to continue to perform under the Contract pending resolution of any Claim, dispute or disagreement between Owner and Contractor (regardless of the nature of the Claim, dispute or disagreement, including claims that the Owner has materially breached or defaulted under the Contract).

**§ 15.1.4.2** The Contract Sum and Contract Time shall be adjusted in accordance with the Initial Decision Maker's decision, subject to the right of either party to proceed in accordance with this Article 15. The Record Architect will issue Certificates for Payment in accordance with the decision of the Initial Decision Maker.

**§ 15.1.5 Claims for Additional Cost**
If the Contractor wishes to make a Claim for an increase in the Contract Sum, notice as provided in Section 15.1.3 shall be given before proceeding to execute the portion of the Work that is the subject of the Claim. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4. The Contractor's sole and complete remedy with respect to any successful Claim (including but not limited to claims based on change to the Work or delay, impact or acceleration) shall be limited to the actual increased costs (including field supervision), if any, (all measured pursuant to Section 7.3.3) incurred by the Contractor as a result of the occurrence or condition giving rise to the Claim, and/or, if necessary, an extension of the Contract Time, as set forth in the Agreement. This recovery shall be deemed to include all profit, overhead, general conditions, supervision, delay, acceleration or impact costs or other expenses or losses allegedly sustained or incurred by Contractor as a result of any Claim.

**§ 15.1.6 Claims for Additional Time**
**§ 15.1.6.1** If the Contractor wishes to make a Claim for an increase in the Contract Time, notice as provided in Section 15.1.3 shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary. The Contractor will provide supporting documentation to substantiate the Claim including a complete CPM schedule analysis detailing the effects on the critical path activities of the approved contractor's construction schedule.

**§ 15.1.6.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated, and had an adverse effect on the scheduled construction.

Init.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:


(1198346052)

**§ 15.1.7 Walver of Claims for Consequential Damages**
The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

.1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and
.2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit, except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.7 shall be deemed to preclude assessment of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

**§ 15.2 Initial Decision**
**§ 15.2.1** Claims, excluding those where the condition giving rise to the Claim is first discovered after expiration of the period for correction of the Work set forth in Section 12.2.2 or arising under Sections 10.3, 10.4, and 11.5, shall be referred to the Initial Decision Maker for initial decision. The Record Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim. If an initial decision has not been rendered within 30 days after the Claim has been referred to the Initial Decision Maker, the party asserting the Claim may demand mediation and binding dispute resolution without a decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.

**§ 15.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.

**§ 15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.

**§ 15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of the request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished, or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

**§ 15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Record Architect, if the Record Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

**§ 15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

**§ 15.2.6.1** Either party may, within 30 days from the date of receipt of an initial decision, demand in writing that the other party file for mediation. If such a demand is made and the party receiving the demand fails to file for mediation

Init.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

within 30 days after receipt thereof, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

*(Paragraph deleted)*
**§ 15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

**§ 15.3 Mediation**
**§ 15.3.1** In lieu of mediation under the Contract, the parties agree to use the following Direct Discussion procedure, so that any reference to "mediation" in the Agreement, General Conditions or other components of the Contract shall mean the following Direct Discussion procedure:

DIRECT DISCUSSIONS If Owner and Contractor (the "Parties") cannot reach resolution on a matter relating to or arising out of the Contract, the Parties shall endeavor to reach resolution through good faith direct discussions between the Parties' representatives (which shall at a minimum include Amrit Gill and Martin Hogan and which may be in-person or by Zoom/teams/Facetime or other electronic means), and who shall record the date of first discussions. If the Parties' representatives are not able to resolve such matter within five (5) Business Days from the date of first discussion, the Parties' representatives shall immediately inform senior executives of the Parties in writing that resolution was not effective. Upon receipt of such notice, the senior executives of the Parties shall meet within five (5) Business Days to endeavor to reach resolution. If the dispute remains unresolved after fifteen (15) Days from the date of first discussion, the Parties shall submit such matter to the dispute resolution procedures selected in the Agreement.

**§ 15.3.2**

**§ 15.3.3** Either party may, within 30 days from the date that mediation has been concluded without resolution of the dispute or 60 days after mediation has been demanded without resolution of the dispute, demand in writing that the other party file for binding dispute resolution. If such a demand is made and the party receiving the demand fails to file for binding dispute resolution within 60 days after receipt thereof, then both parties waive their rights to binding dispute resolution proceedings with respect to the initial decision.

**§ 15.3.4** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**§ 15.4 Arbitration**
**§ 15.4.1** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. The Arbitration shall be conducted in the place where the Project is located, unless another location is mutually agreed upon. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**§ 15.4.1.1** A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

**§ 15.4.2** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Init.
MH /

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1198346052)

**§ 15.4.3** The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement, shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**§ 15.4.4 Consolidation or Joinder**

**§ 15.4.4.1** Subject to the rules of the American Arbitration Association or other applicable arbitration rules, either party may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

**§ 15.4.4.2** Subject to the rules of the American Arbitration Association or other applicable arbitration rules, either party may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

**§ 15.4.4.3** The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as those of the Owner and Contractor under this Agreement.



AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 09:37:47 ET on 02/05/2024 under Order No.6417165033 which expires on 12/31/2026, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:
(1198346052)