**Construction Disbursing and Escrow Agreement**
File No.

This Construction Disbursing and Escrow Agreement ("**Agreement**") is entered into as of the 25th day of March, , 2024, by and among FIRST AMERICAN TITLE INSURANCE COMPANY, in its capacity as disbursing agent ("**Disbursing Agent**"), Hogan Brothers Construction International Corp. ("**General Contractor**"), South Florida Financing II, LLC, a Florida limited liability company ("**Construction Lender**"), PACE Equity, LLC. a Wisconsin limited liability company ("**PACE Lender**"), The Bank of Missouri, a Missouri state chartered bank ("**Bridge Lender**"), Gulfstream Owner, LLC, a Delaware limited liability company ("**Owner**"), Checkmate Design, LLC ("**Architect**") **and** FIRST AMERICAN TITLE INSURANCE COMPANY, in its capacity as title company ("**Title Company**").

WHEREAS, Construction Lender and Owner have entered into a Construction Loan and Security Agreement (the "**Construction Loan Agreement**") which is secured by an Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing on the land described in Exhibit A, attached hereto (the "**Land**") commonly known as the Gulfstream Hotel and located at 1 Lake Avenue, Lake Worth Beach Florida, and more particularly described in Title Company's Commitment for Title Insurance File No. NCS-987112A-STLO issued by Title Company (collectively, the "**Title Commitment**"), on which certain improvements are to be made to construct a 90 room hotel (the "**Project**"), and pursuant to which Lender has agreed to make advances to Owner in the aggregate principal amount of up to $16,000,000 for the payment of a portion of the costs of construction of the Project ("**Project Costs**") (in addition to the $8,300,000 advance made on the date hereof for the acquisition of the Land and existing improvements). The Construction Loan Agreement and all other documents and instruments evidencing or securing the loan evidenced thereby are hereinafter collectively referred to as the "**Construction Loan**" or "**Construction Loan Documents**").

WHEREAS, PACE Lender and Owner will enter into (i) a Commercial PACE Financing Agreement with Florida Development Finance Corporation, a public body corporate and politic, a public instrumentality and a local agency organized and existing under the laws of the State of Florida and Florida Resiliency and Energy District, a public body corporate and politic created as a separate legal entity pursuant to Section 163.01(7), Florida Statutes (the "**PACE Financing Agreement**"), which shall be secured by an assessment lien on the Land in accordance with Sections §163.08 Florida Statutes (the "**PACE Act**") and (ii) all other documents executed or delivered in connection therewith (together with the PACE Financing Agreement and this Agreement collectively the " **PACE Loan**" or "**PACE Loan Documents**"). Pursuant to the PACE Loan Documents, PACE Lender has agreed to make disbursements of the PACE Loan for the purpose of financing (i) the cost of the installation of Qualifying Improvements (as defined in the PACE Act) and identified in the PACE Financing Agreement as PACE Improvements (the "**PACE Improvements**") and (ii) certain soft costs and capitalized interest pursuant to the terms of the PACE Financing Agreement and in accordance with the PACE Act;

WHEREAS, Bridge Lender will loan proceeds of a loan in the amount of $_3,864,288 to Owner pursuant to that certain Loan Agreement (the "**Bridge Loan Agreement**") between Bridge Lender and Owner dated as of even date herewith . The Bridge Loan Agreement and all other documents and instruments evidencing or securing the loan evidenced thereby are hereinafter collectively referred to as the "**Bridge Loan**" or "**Bridge Loan Documents**").

WHEREAS, the Construction Lender, Bridge Lender, and PACE Lender are sometimes collectively herein called the "**Lender" or "Lenders", the** Bridge Loan, the Construction Loan and the PACE Loan are sometimes collectively herein called the "**Loans**" and the Bridge Loan Documents, the Construction Loan Documents, and the PACE Loan Documents are sometimes collectively referred to herein as the "**Loan Documents**".

WHEREAS, Owner and the Lake Worth Beach Community Redevelopment Agency, a public body corporate and politic of the State of Florida ("**CRA**") have entered into that certain Lake Worth Beach Community Redevelopment Agency Agreement for Development of Property dated as of _August



EXHIBIT
B

16, 2022, as amended (the "**CRA Agreement**") to fund Eligible Redevelopment Project Costs (as defined in the CRA Agreement) , and that certain Escrow Agreement dated as of June 21, 2023 (the "**CRA Escrow Agreement**"), pursuant to which the CRA will fund a grant (the "**CRA Grant**") to Owner from the CRA's Redevelopment Trust Fund, $1.8M of which will be available at Closing and during construction. (.

WHEREAS, Disbursing Agent will disburse the Loans, the CRA Grant, and the initial capital contribution in the amount of $1,207,536.00 ("**Investor Contribution**") to be made by The Sherwin-Williams Company in accordance with the terms of the Operating Agreement of Gulfstream Operator, LLC a Florida limited liability company (the "**Master Tenant**"), which Investor Contribution will be subsequently contributed by Master Tenant to Owner pursuant to the First Amended and Restated Operating Agreement ]of Owner dated of even date herewith, all used to pay the costs of Project rehabilitation, as outlined in the approved Project Budget delivered to Disbursing Agent "**Budget**") and this Agreement.

WHEREAS, Title Company shall issue a mortgagee's policy of title insurance in favor of Construction Lender insuring Construction Lender's first mortgage on the Project (the "**Loan Policy**"), subject to the terms of the PACE Loan and related lien for the special assessment , in accordance with the Title Commitment and written instructions provided by Construction Lender. Disbursing Agent is issuing said Policy in material reliance on each of the covenants, agreements, representations and warranties set forth in this Agreement.

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and the sufficiency of which are hereby acknowledged, the parties agree as follows:

**Section 1. <u>Request for Disbursement Procedure</u>**

In addition to satisfying the other requirements for the disbursement of funds set forth in this Agreement, each request for Disbursement hereunder shall consist of and be processed as follows:

A. <u>General Contractor's Certificate and Request for Disbursement.</u> The General Contractor shall prepare a General Contractor's Certificate and Request for Disbursement, accompanied by AIA G 702: Application and Certification for Payment (1992) (or its equivalent), cover page summarizing the entire Project costs, with individual AIA G 703: Attached Detail Supporting G702 (1992) (or its equivalent) continuation sheets for each building in the Project (collectively the "**General Contractor's Requisition**").

B. <u>Owner's Affidavit and Requisition for Funds</u>. Owner shall prepare a draft of the "Owner's Affidavit and Requisition for Funds" in the form attached hereto as **<u>Exhibit B</u>**, incorporating both the General Contractor's Requisition and all Owner provided materials, soft costs, and any other items in the Budget not included in the General Contractor's Requisition (collectively the "**Draw Request**").

C. <u>Record Architect Review and Execution.</u> The General Contractor's Requisition and the Draw Request shall be submitted to the Architect, who shall cause review and execution by the local architect of record Beilinson Gomez Architects, P.A. ("**Record Architect**"). Signature by the Record Architect shall be deemed to evidence its agreement and certification to the parties hereto that the work for which payment has been requested has been completed in a good and workmanlike manner, in accordance with applicable building and zoning codes, and Americans with Disabilities Act requirements and in a percentage consistent with the General Contractor's application to the Owner for payment.

D. <u>Owner Submits Full Request for Disbursement.</u> The General Contractor's Requisition and Owner's Draw Request, bearing signature of the Record Architect, shall next be submitted to the Owner for its review and approval, which shall be evidenced by the Owner's execution and delivery of a sworn statement containing the following (collectively, the "**Request for Disbursement**") to the Construction Lender, Bridge Lender, PACE Lender, CRA, and Disbursing Agent for review and approval:

(i) a completed and executed Draw Request;

(ii) a Project budget summary, updating Project sources and uses to such date (and as to any line item cost overrun, documentation of the source of payment of such cost), and attaching thereto:

(a) a list of all Project construction and non-construction costs payable pursuant to such draw;

(b) the General Contractor's Requisition, along with a schedule of values; and

(c) any items required to be delivered for such Disbursement pursuant to Section 2, Section 3, and Section 4 of this Agreement.

(iii) a payee list;

(iv) invoices for all soft costs;

(v) a current sources and uses of funds prepared by Owner;

(vi) any signed change orders not previously received by the Construction Lender, Bridge Lender , PACE Lender and the Disbursing Agent; and

(vii) All items described in Schedule 1, item viii (lien waivers and supporting documentation)

E. Title Searches for Lien Holders. Immediately upon receipt of each Request for Disbursement, Title Company shall make such searches as it deems necessary to determine that the status of the title to the Project has not changed since the date of prior notification given to the Construction Lender and PACE Lender and if such status of title has changed, then Title Company will give such parties immediate notice by e-mail of any intervening liens or other matters affecting title as disclosed by said records (other than (i) those expressly listed in the Loan Policy, (ii) any other liens expressly permitted under the Loan Documents, or (iii) as may have been approved and accepted by the Construction Lender or the PACE Lender and shown in endorsements or continuations previously given to the applicable Lender). Such telephone or e-mail notice will be confirmed to all such entities in writing by Title Company as soon as possible thereafter. If any such intervening liens or other matters affecting title are disclosed, Disbursing Agent shall withhold payment of the Disbursement then being requested until the Construction Lender and the PACE Lender notify Disbursing Agent and Title Company that it will authorize the disbursement of funds notwithstanding any such lien or encumbrances or that Title Company is satisfied that such intervening lien or other matter is resolved. Notwithstanding the foregoing, if an intervening lien has been (i) insured over by Title Company under its Loan Policy in favor of Construction Lender, or any date down endorsement thereto, or (ii) bonded over by Owner or General Contractor or Owner or General Contractor provides alternative collateral satisfactory to the Construction Lender and the PACE Lender, and such intervening lien is not otherwise in violation of the Loan Documents, then Disbursing Agent shall continue disbursing as provided herein but may pursue any rights or remedies it may have against any person or persons liable as a result thereof.

So long as Owner is current in its payment obligations to the General Contractor, the following procedures shall apply in the event of the filing of any mechanic's liens by subcontractors or materialmen who have performed work within General Contractor's scope for the Project. Disbursing Agent or Title Company shall provide written notice to General Contractor of the existence of such mechanic's lien. Within twenty (20) days of General Contractor's receipt of such written notice, General Contractor shall either (a) cause the lien to be discharged and removed of record, or (b) so long as Construction Lender if reasonably satisfied that is security interest are not in jeopardy and the Project is not subject to risk of foreclosure of such lien, provide the Disbursing Agent with a bond in an amount sufficient to protect the interests of the Title Company and the Disbursing Agent, Owner, Construction Lender and such other parties as the Disbursing Agent may reasonably identify, and thereafter expeditiously address the lien through such

dispute resolution methods as the General Contractor deems reasonably appropriate. If any legal action is filed in connection with such lien, the General Contractor and Owner shall jointly and severally fully defend and indemnify the Construction Lender, PACE Lender, Disbursing Agent and Title Company and all other parties identified in the bond. So long as the General Contractor and Owner comply with its obligations stated herein, the Disbursing Agent shall not withhold payment from the General Contractor or otherwise take any actions with respect to addressing the lien. If the General Contractor or Owner fail to comply with the provisions stated herein, the Disbursing Agent may take such action as it deems reasonable under the circumstances, consulting with the Owner, PACE Lender and Construction Lender as necessary, to discharge the lien, with all costs of the same being charged to the account of General Contractor.

F. Special Provisions for the PACE Loan.

All capitalized but undefined terms in this Section F shall have the meaning given to them in the PACE Financing Agreement.

A. In addition to all other deliverables required to be provided to PACE Lender pursuant to the Disbursing Agreement, prior to the disbursement of any PACE Advance for the Direct Costs (as hereinafter defined), PACE Lender shall have received and approved each of the items below. "**Direct Costs**" means the PACE Loan amount minus closing and financing costs deducted at Closing, which amount represents the cost of the PACE Improvements set forth in the PACE Scope of Work. "**PACE Improvements**" means the list of improvements set forth in the PACE Scope of Work set for the on Exhibit E..

i. an Inspector Report. "**Inspector Report**" means a construction progress inspection report prepared by the Project Inspector setting forth: (A) commentary regarding the overall progress of the Project, including site observations with color photographs and overall percentage (%) of completion, (B) General Contractor AIA G702/G703 review: (1) Retainage review, (2) contingency review, (3) work in place vs billing, and (4) change order review, (C) scheduled vs. estimated completion timeline and an independent opinion of the consultant that the GC can accomplish the scheduled completion date (or not), noting any delays and the cause, (D) stored materials review (on-site and off-site) including deposits for materials and insurance, (E) permit status, and (F) funding recommendation. "**Project Inspector**" means a qualified third-party company or professional as determined or approved by PACE Equity. "**PACE Scope of Work**" means the breakdown of PACE Program qualifying improvements installed on the Project and more particularly described on Exhibit E to the Disbursing Agreement as the "PACE Measures."

ii. a certification from Owner: that all amounts requested are solely for costs related to PACE Improvements pursuant to the PACE Scope of Work in accordance with the Plans and in the proper form attached to the Disbursing Agreement as Exhibit B; PACE Lender may require verification by the Project Inspector, Architect, and/or the General Contractor of the accuracy of Owner's Request for Disbursement, the progress of construction and the conformity of construction with the approved Plans. "; and

iii. Such other instruments, documents, and information as PACE Lender may reasonably require.

Each release of PACE Loan funds will be without any cost to PACE Lender, and Owner shall pay all costs associated with each such release, including, without limitation, any costs imposed by Project Inspector for the Inspector Reports and/or PACE Lender's reliance on any such Inspector Reports

B. Frequency. Owner may not submit a Request for Disbursement more frequently than monthly.

**Section 2. Conditions to All Disbursements.**

A. No disbursement of funds to Owner from the Loans or CRA Grant (each a "**Disbursement**" and collectively, the "**Disbursements**"), including, without limitation, the First Disbursement (as hereinafter defined) and any Subsequent Disbursement (as hereinafter defined) shall be made to the Disbursing Agent for subsequent disbursement in accordance with the applicable Request for Disbursement until: (i) the satisfaction of the conditions precedent set forth on Schedule 1attached hereto, except to the extent that said conditions precedent are waived by the Construction Lender, PACE Lender, and the Bridge Lender, and (ii) Disbursing Agent has received the written approval of such Disbursement from the Construction Lender, PACE Lender, and the Bridge Lender.

**Section 3. Conditions to Final Disbursement.**

The final Disbursement (the "**Final Disbursement**"; together with the First Disbursement and the Subsequent Disbursements, the "**Disbursements**") shall not be made to the Disbursing Agent for subsequent disbursement in accordance with the applicable Request for Disbursement until completion of the Project and the satisfaction of the conditions precedent set forth on **Schedule 2** attached hereto, except to the extent that said conditions precedent are waived by the Construction Lender, PACE Lender, and the Bridge Lender.

**Section 4. Funding of Approved Request for Disbursement.**

A. Upon receipt of a Request for Disbursement, Disbursing Agent shall review such Request for Disbursement (including making an independent determination whether the requirements set forth Section 2, Section 3, and Section 4 of this Agreement, as applicable to Disbursing Agent's obligations hereunder, above have been satisfied) and within five (5) business days after a Request for Disbursement has been received, the Disbursing Agent shall either deny such request in whole or in part and notify Owner of the reasons for such denial or notify the Construction Lender, the PACE Lender, the Bridge Lender of its recommendation for approval of such Request for Disbursement. Within five (5) business days from the receipt of Disbursing Agent's notice of its recommendation for approval or denial of the Request for Disbursement, Construction Lender, the PACE Lender, and the Bridge Lender shall each, a) respond to Owner and Disbursing Agent with approval or denial; and b) if approval, then deposit with Disbursing Agent funds from the appliable Loan to pay applicable costs in such Request for Disbursement (individually and collectively, "**Advances**"), to the extent not already held by Disbursing Agent, and c) if denial, then including an explanation therefor with reasonable detail. Within two (2) business days of receipt by Disbursing Agent of all required approvals of the Request for Disbursement, the Construction Lender, the PACE Lender, and the Bridge Lender, as applicable, shall disburse the approved Project funds from the applicable Loan to Disbursing Agent, for payment of the approved Request for Disbursement. Disbursing Agent shall, within two (2) business days of receipt of such Project funds and if Disbursing Agent has received the appropriate lien waivers or other required documentation from such payees, disburse such Project funds (together with any then-available CRA Advances) by delivering to the persons and/or entities shown in the approved draw, its check(s) in the amounts so requested.

B. If a subcontractor or materialman fails to provide a lien waiver in the form specified by this Agreement as may be reasonably required by Disbursing Agent, then Disbursing Agent may withhold, in connection with a pending application for payment, an amount equal to the amount of the lien waiver not provided. Disbursing Agent shall otherwise make payment as prescribed herein with respect to all other amounts otherwise appropriate for distribution. If General Contractor provides a bond in favor of the Construction Lender, PACE Lender, Title Company and Disbursing Agent respecting such amount withheld,

then Disbursing Agent shall continue disbursing such amount to General Contractor as provided herein but may pursue any rights or remedies it may have against any person or persons liable as a result thereof.

C. Special Provisions for the CRA Grant. The parties acknowledge that the CRA will only disburse the CRA Grant to reimburse previously paid Eligible Infrastructure Improvement Costs. Accordingly, each month Disbursing Agent shall provide to Owner conditional lien waivers and evidence of payment to the contractor(s) for the amounts represented by such lien waivers (the "**Evidence of Payment**"); Owner shall provide to the CRA the Evidence of Payment and the applicable construction payment application (also known as the "Request for Disbursement" in this Agreement) including all hard and soft costs and all supporting invoices and documentation, pursuant to the CRA Agreement and the CRA Escrow Agreement. The CRA Escrow Agreement requires that within 30 days of receipt, the CRA will grant approval fora , disbursement of funds from the CRA Grant, and within 5 business days thereafter, the escrow agent under the CRA Escrow Agreement will release the applicable portion of the CRA Grant (each such disbursement, a "**CRA Advance**"). Owner shall direct that each CRA Advance be wired directly to Disbursing Agent, (and in the event that any portion of the CRA Advance shall be received by Owner, then Owner shall promptly forward such funds to Disbursing Agent), to be held and disbursed for Project costs per the Budget, as provided in Section 4E below.

D. Special Provisions Regarding Disbursement of General Contractor Fee. The parties acknowledge and consent to the following additional Project protection negotiated by Construction Lender and General Contractor: pursuant to a separate agreement titled General Contractor's Fee Escrow Agreement in Lieu of Payment and Performance Bond dated as of March 25, 2024 (the "GC Fee Agreement"), until substantial completion of the Project, whenever a Request for Disbursement contains a fee to the General Contractor due under the Construction Contract for the Project (**"General Contractor Fee"),** upon receipt of payment the General Contractor will deposit 50% of such General Contractor Fee into an escrow account held by legal counsel for Construction Lender, which escrow account may be drawn upon pursuant to its terms and conditions. These funds voluntarily paid by General Contractor have already been disbursed to General Contractor under this Agreement as evidenced by the General Contractor's Requisition and are not further subject to this Disbursing Agreement. As used in this Agreement, "**Construction Contract**" means that certain Agreement Between Owner and Contractor dated as of February 2, 2024, between Owner and General Contractor for development of the Project, and all amendments, modifications, supplements or restatements thereto, as approved by Lenders as may be required pursuant to the Loan Documents.

E. Order of Funds. All parties acknowledge the following constitute the Project sources of funds, and that Project funds are disbursed in the following order to fund those Project construction and other transaction costs in the Budget and set forth on the approved Request for Disbursement:

(i) First, the Investor Contribution until fully disbursed;

(ii) Second, if applicable, the available CRA Advances received by Disbursing Agent (pursuant to section 4C above, until such CRA Advance fully disbursed;

(iii) Third, proceeds from the Bridge Loan until fully disbursed;

(iv) Fourth,

a. Proceeds from the PACE Loan shall be disbursed by PACE Lender, in an amount equal to forty-nine percent (49%) of the total amount to be funded by PACE Lender and Construction Lender for application to Construction Costs only, in a contemporaneous advance. Owner acknowledges that under this method it is possible that certain measures funded by PACE Lender may not be funded in the same period for which the Request for Disbursement applies;



Jsr

b. Proceeds from the Construction Loan shall be disbursed by Construction Lender, in an amount equal to fifty-one percent (51%) of the total amount to be funded by PACE Lender and Construction Lender, in a contemporaneous advance.

As provided on **Exhibit B** the Owner's Draw Request shall detail the portion of each Request for Disbursement payable from each source, which shall conform to the requirements of this Section 4E.

**Section 5.** **Project in Balance; Construction Letter of Credit.**

If, at any time during the course of construction of the Project Construction Lender, reasonably determines the total of the unpaid costs for the Project as indicated on a Request for Disbursement exceeds the sum of the undisbursed Available Proceeds (as defined in the Construction Loan Agreement, then provided that Construction Lender is not in default under the Construction Loan Documents, Construction Lender may give written notice to Escrow Agent and Owner that Owner must deposit with the Disbursing Agent the sum necessary to make the Available Proceeds including all amounts then deposited, sufficient to pay the Total Project Costs set forth in the Budget (such sum the "**Shortfall Funds**"), as more particularly provided in the Construction Loan Documents. The parties acknowledge that pursuant to the Construction Loan Documents, Owner has delivered to Disbursing Agent an irrevocable letter of credit (the "Construction Letter of Credit") in the amount of Five Hundred Thousand and No/100 Dollars ($500,000.00), to be held by Disbursing Agent as follows: if Owner does not deposit the Shortfall Funds within fifteen Business Days after receipt of demand therefor per the Construction Loan Agreement, then, upon the written request of Construction Lender (providing a Lender's Affidavit as described below and 24 hours written notice to Owner (or upon the written request of Owner), the Disbursing Agent may and shall draw on the Letter of Credit as necessary to pay for construction costs in the approved Request for Disbursement. The Construction Letter of Credit shall be returned to the Owner within 30 days after Completion of Construction as defined in the Construction Loan Documents. At Owner's option and written request, Construction Lender shall exhaust its remedy pursuant to the Construction Letter of Credit before Owner has any obligation to deposit Shortfall Funds under this Disbursing Agreement. Construction Lender's written request to draw on the Letter of Credit shall include an affidavit (the "Lender's Affidavit") signed by Lender supporting the following requirements in the Draw Affidavit under the Letter of Credit:

3. THE TOTAL OF THE UNPAID COSTS FOR THE PROJECT AS INDICATED ON A REQUEST FOR DISBURSEMENT EXCEEDS THE AVAILABLE PROCEEDS PER THE DISBURSING AGREEMENT;

4. GULFSTREAM OWNER, LLC HAS BEEN GIVEN WRITTEN NOTICE AND AFTER 15 BUSINESS DAYS HAS NOT DEPOSITED THE FUNDS NECESSARY TO PAY ALL REMAINING PROJECT COSTS SET FOR THE IN THE BUDGET THAT EXCEED THE AVAILABLE PROCEEDS (THE "SHORTFALL FUNDS") OR GULFSTREAM OWNER, LLC HAS REQUESTED A DRAW IN THE LETTER OF CREDIT IN LIEU OF DEPOSITING SHORTFALL FUNDS; AND

5. SETTING FORTH THE AMOUNT OF THE SIGHT DRAFT DRAWN UNDER THIS LETTER OF CREDIT, AND CONFORMING, IN REASONABLE DETAIL, AND CONFIRMING THAT THE DRAFT IS IN THE AMOUNT OF APPROVED AND UNPAID PAY APPLICATIONS FOR THE COSTS OF SUCH CONSTRUCTION PURSUANT TO THE DISBURSING AGREEMENT.

**Section 6.** **Loan Fees paid outside Disbursing Agreement.** Except as specifically provided in the Budget, Construction Lender, Bridge Lender, and PACE Lender, agree to collect directly from Owner all of their respective charges, including, but not limited to, loan origination fees and interest

due to Construction Lender, Bridge Lender, and PACE Lender pursuant to the terms of their respective financing documents. Construction Lender, Bridge Lender, PACE Lender, , and Owner hereby agree that from and after the date hereof, all funds required to be disbursed in connection with construction of the Project shall be disbursed through Disbursing Agent, and Construction Lender, Bridge Lender, PACE Lender, and Owner will notify Disbursing Agent of any additional contracts for work or which of which they become aware.

**Section 7.** **Protections for Disbursing Agent.** The parties hereto agree to all of the conditions of this Agreement and further agree as follows:

A. Disbursing Agent shall not be liable for interest on funds or advances deposited with it.

B. Disbursing Agent will keep and maintain books and records in sufficient detail to reflect the disbursements made by it pursuant to this Agreement. Lender, PACE Lender or Owner may, during normal business hours, examine the books and records of Disbursing Agent pertaining to those disbursements.

C. No liability is assumed by Disbursing Agent to Owner for protection against any mechanics' liens, except for liens arising out of Disbursing Agent's gross negligence, bad faith or willful misconduct in carrying out its duties under this Agreement. General Contractor agrees to construct or cause the construction of the improvements to the Land and that construction will be clear of any liens imposed by law for service, labor or material, provided that General Contractor will not be responsible for liens that arise out of a failure by the Owner to make payments required under the Construction Contract .

D. Functions and duties assumed by Disbursing Agent include only those described in this Agreement, and Disbursing Agent is not obligated to act except in accordance with the terms and conditions of this Agreement. Disbursing Agent does not insure that the Project will be completed, or that any improvements for the Project will be in accordance with the plans and specifications, or that, except for disbursing PACE Loan proceeds only for the purposes of paying for PACE Improvements, sufficient funds will be available for the completion of the Project. From and after a default by Owner or General Contractor under this Agreement, Disbursing Agent, at its election, may make payments directly for any item required to be paid hereunder without first securing approval of Owner and/or General Contractor. Any such payment shall not relieve Owner and/or General Contractor of its liability hereunder.

E. Disbursing Agent shall not be responsible for the loss of any Documents, Advances or other funds until the same are in the possession of Disbursing Agent. Documents, Advances, or funds which are deposited in the United States Mail shall not be construed as being in the custody of Disbursing Agent until actually received by Disbursing Agent.

F. Owner and General Contractor agree that agents and employees of Disbursing Agent shall have the right to enter upon the Land at any time for inspection purposes. No liability is assumed by Disbursing Agent for the accuracy of any inspection.

G. Owner agrees it will not transfer title to the Land insured by Disbursing Agent under the Policies, nor enter into additional contracts or work beyond the construction contract with General Contractor in the amount of $22,925,000 which contract has already been executed, and the Owner provided construction in the Budget, without timely advance notice to Disbursing Agent. General Contractor agrees not to perform any additional work beyond the contract already executed in the amount of $22,925,000 unless change orders are submitted and approved by Owner and acknowledged by Disbursing Agent.

H. Owner and General Contractor each agree to indemnify and hold Disbursing Agent harmless from all loss or damage of any nature which Disbursing Agent may sustain resulting

from the negligent acts or omissions of the Owner or General Contractor, as the case may be, in the performance of each of their respective obligations under this Agreement. Loss or damage shall include reimbursement of attorneys' fees.

I. Owner and General Contractor hereby request that Disbursing Agent issue its loan policy or policies of title insurance upon said Land without exception therein as to any possible unfiled mechanics' or materialmen's liens. In consideration thereof and as inducement therefor, said parties do hereby indemnify and hold Disbursing Agent harmless of and from any and all loss, cost, damage and expense of every kind including attorneys' fees, which Disbursing Agent shall or may suffer or incur or become liable for under its said Policy or Policies now to be issued, or any reissue, renewal or extension thereof, or new policy at any time issued upon said Land, part thereof or interest therein, arising directly or indirectly out of or on account of any such mechanics' or materialmen's lien or liens, or claim or in connection with Disbursing Agent's enforcement of its rights under this Agreement, unless and except to the extent that any such lien or claim results from Disbursing Agent's or its employees' or agents' negligence or default under this Agreement. Notwithstanding the foregoing, it is understood that the General Contractor's agreement of indemnity is limited to liens arising from work performed pursuant to its contract with Owner and for which General Contractor has been paid. Owner's agreement of indemnity is limited to liens arising from work beyond the scope of the contract with the General Contractor, and to events of default by the General Contractor hereunder. All representations, agreements of indemnity and waivers are also to the benefit of any party insured under any policy issued by Disbursing Agent related to the Land and any action brought hereunder may be instituted in the name of Disbursing Agent or said insured or both. Owner and General Contractor agree that in the event a lien or claim arises for which it is responsible under this Agreement, it or they will provide satisfactory security to Disbursing Agent with respect to said lien or claim while Owner and/or General Contractor works to resolve said lien or claim provided that General Contractor will not be responsible for liens that arise out of a failure by the Owner to make payments required under the Construction Contract . The indemnities provided herein shall survive termination of this Agreement.

J. If Owner or General Contractor fails to meet its obligations under this Agreement with respect to its indemnification for liens or claims arising out of the Project within a timeframe that does not compromise Disbursing Agent's rights or obligations with respect to any such claim, action or proceeding, then Disbursing Agent shall have the right, but not the obligation, to take such action as Disbursing Agent deems reasonable to protect its interests and that of its insured under any Policy.

**Section 8.** **Fees.** Disbursing Agent's fee for services hereunder shall be $15,000,, which contemplates 14-16 draws. Disbursing Agent reserves the right to assess additional fees if the construction period extends substantially beyond 16 months. Lenders shall not be responsible for payment of Disbursing Agent's fees hereunder, other than through application of Loan Advances pursuant to approved closing settlement statement or draw requests.

**Section 9.** Notice.
Notice.

Generally. All notices hereunder shall be in writing and shall be deemed to have been properly given and received (i) one (1) Business Day after having been deposited for overnight delivery with any reputable overnight courier service, or (ii) upon receipt if deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, or (iii), except for notices of default or termination (which must be given by (i) or (ii) above), upon receipt (or if not during business hours, then at the next occurring business hour) if given by email; in each case addressed to the addresses set forth below in this Section or as such party may from time to time designate by written notice to the other

parties; provided, however, that non-receipt of any communication as the result of any change of address of which the sending party was not properly notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication:

| | |
|---|---|
| To Construction Lender: | South Florida Financing II, LLC<br>109 SE 5th Ave., 2nd Floor<br>Delray Beach, FL 33483<br>Attn: William H. Milmoe<br>Email: bill.milmoe@cdsholdings.com |
| To Title Company: | First American Title Insurance Company<br>101 S. Hanley suite 575<br>St. Louis MO 63105<br>Attn: Maggie Lykens<br>Email: mlykens@firstam.com |
| To General Contactor: | Hogan Brothers Construction International Corp.<br>18851 NE 29th Avenue, Suite 413<br>Aventura, FL 33180<br>Attn: Martin Hogan<br>Email: martinh@hoganbrothers.net |
| To Bridge Lender: | The Bank of Missouri<br>916 N. Kingshighway<br>Perryville MO 63775<br>Attn: Ed J. Flores, Community Bank President<br>Email: eflores@bankofmissouri.com |
| To Owner: | Gulfstream Owner, LLC<br>4240 Manchester Avenue<br>St. Louis, Missouri 63110<br>Attn: Amrit Gill and Amy Gill<br>email amrit@restorationstl.com and Amy Gill email amy@checkmatedesign.com |
| To Architect: | Checkmate Design, LLC<br>4240 Manchester Avenue<br>St. Louis, Missouri 63110<br>Attn: Amy Gill<br>email amy@checkmatedesign.com |
| To PACE Lender : | PACE Equity LLC<br>555 E. Wells St., Suite 1510<br>Milwaukee, WI 53202<br>Attn: Kevin Moyer, Chief Investment Officer, and Pam Haack, Director Asset Compliance<br>E-mail: kmoyer@pace-equity.com<br>E-mail: Phaack@pace-equity.com |

Any party, by notice to the other parties in the manner provided herein, may designate additional or different addresses for subsequent notices or communications.

**Section 10. Miscellaneous.**

A. Should Disbursing Agent receive notice that Owner or General Contractor has executed a security interest to another party under Section 9-607 or any other provision of the Uniform Commercial Code and that party demands payment from Disbursing Agent of any funds held in its possession, Disbursing Agent will be released from any and all liability incurred by it under this Agreement except as to funds previously disbursed by Disbursing Agent and except as to Disbursing Agent's liability under the Policies issued to Lender. Disbursing Agent will resume disbursing funds, pursuant to this Agreement, if provided with a satisfactory full release of demand of payment. Disbursing Agent's liability will then remain in full force and effect.

B. .Each individual executing this Agreement on behalf of a party which is an entity, represents, warrants, and covenants to the other parties that (a) such entity is duly formed and authorized to do business in the state in which the Land is located ("State"); (b) such person is duly authorized to execute and deliver this Agreement on behalf of such entity in accordance with authority granted under the organizational documents of such entity, and (c) such entity is bound under the terms of this Agreement.

C. This Agreement shall be binding upon the parties hereto and their respective successors and assigns. This Agreement is only between the parties hereto, and is not intended to be, nor shall it be construed as being, for the benefit of any third party. This Agreement can be amended or modified only by a written amendment signed by the parties hereto. This Agreement and any modifications to this Agreement may be executed in several counterparts, and as so executed, shall constitute one agreement binding on all parties hereto, notwithstanding that all parties are not signatories to the original or the same counterpart.

D. This Agreement shall be construed according to its fair meaning as if prepared by all parties to this Agreement. This Agreement shall be interpreted in accordance with the laws of the State, and the parties hereby agree to submit to the jurisdiction of any state or federal court having competent jurisdiction located in the State, and to make no objection to venue therein should any action at law or in equity be necessary to enforce or interpret this Agreement. If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party in such action shall be entitled to have and to recover from the other party its reasonable attorneys' fees and other reasonable expenses in connection with such action or proceeding in addition to its recoverable court costs.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties execute this Agreement as of the date written above.

Disbursing Agent and Title Company:

**FIRST AMERICAN TITLE INSURANCE COMPANY**

By: Margaret Lykens

Margaret M. Lykens

SIGNATURE PAGE TO CONSTRUCTION DISBURSING AND ESCROW AGREEMENT

IN WITNESS WHEREOF, the parties execute this Agreement as of the date written above.

General Contractor:

**HOGAN BROTHERS CONSTRUCTION INTERNATIONAL CORP.**

By: [signature]
Print Name: Matthew J. Hogan
Title: President

SIGNATURE PAGE TO CONSTRUCTION DISBURSING AND ESCROW AGREEMENT

IN WITNESS WHEREOF, the parties execute this Agreement as of the date written above.

PACE Lender:

**PACE Equity, LLC**

By: ______________________
Print Name: Edward A. Engman, Jr.
Title: President and CEO

SIGNATURE PAGE TO CONSTRUCTION DISBURSING AND ESCROW AGREEMENT

IN WITNESS WHEREOF, the parties execute this Agreement as of the date written above.

Construction Lender:

**SOUTH FLORIDA FINANCING II, LLC**

By: ______________________________
Print Name: William H. Milmoe
Title: President

SIGNATURE PAGE TO CONSTRUCTION DISBURSING AND ESCROW AGREEMENT

IN WITNESS WHEREOF, the parties execute this Agreement as of the date written above.

Bridge Lender:

**THE BANK OF MISSOURI**

By: ____________________
Print Name: Edward J Flores
Title: Community Bank President

SIGNATURE PAGE TO CONSTRUCTION DISBURSING AND ESCROW AGREEMENT

IN WITNESS WHEREOF, the parties execute this Agreement as of the date written above.

Owner:

GULFSTREAM OWNER, LLC, a Delaware limited liability company

By: ______________________________

Amrit Bir Singh Gill, Trustee of the Aminell Anne Harris Gill and Amrit Bir Singh Gill Joint Revocable Trust u/t/a dated December 1, 2004, as amended, Managing Member of Gulfstream Owner, LLC

By: ______________________________

Aminell Anne Harris Gill, Trustee of the Aminell Anne Harris Gill and Amrit Bir Singh Gill Joint Revocable Trust u/t/a dated December 1, 2004, as amended, Managing Member of Gulfstream Owner, LLC

SIGNATURE PAGE TO CONSTRUCTION DISBURSING AND ESCROW AGREEMENT

IN WITNESS WHEREOF, the parties execute this Agreement as of the date written above.

Architect:

**CHECKMATE DESIGN, LLC**

By: ______________________
Name: ______________________
Title: ______________________

SIGNATURE PAGE TO CONSTRUCTION DISBURSING AND ESCROW AGREEMENT

Exhibit A
Description of the Land

Parcel 1 of Gulfstream Hotel Consolidation Plat recorded in Plat Book 137, pages 28-29, of the Public Records of Palm Beach County, Florida.

Formerly known as:

The Land referred to herein below is situated in the County of Palm Beach, State of Florida, and is described as follows:

LOTS 9, 10, 11 AND THE NORTHERLY 24.50 FEET OF LOT 12, BLOCK 33, THE PALM BEACH FARMS CO. PLAT NO. 2, LUCERNE TOWNSITE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 2, PAGES 29 THROUGH 40, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, SAID LAND LYING IN THE LUCERNE TOWNSITE, PALM BEACH COUNTY, FLORIDA.
AND
THAT CERTAIN 10 FOOT WIDE STRIP OF LAND LYING WEST OF AND ADJACENT TO THE FOLLOWING DESCRIBED PARCEL:

LOTS 9, 10, 11 AND THE NORTHERLY 24.50 FEET OF LOT 12, BLOCK 33, THE PALM BEACH FARMS CO. PLAT NO. 2, LUCERNE TOWNSITE, (NOW KNOWN AS LAKE WORTH), ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 2, PAGES 29 THROUGH 40 OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, SAID LAND LYING IN THE LUCERNE TOWNSITE, PALM BEACH COUNTY, FLORIDA

Exhibit B
Owner's Affidavit and Requisition for Funds No. ___

Date:_______________

TO:

PROJECT: Gulfstream Historic

South Florida Financing II, LLC ("Construction Lender")
The Bank of Missouri ("Bridge Lender")
PACE Equity, LLC ("PACE Lender")
First American Title Insurance Company (the "Disbursing Agent")
First American Title Insurance Company ("Title Company")
(collectively, "Project Participants")

Pursuant to Construction Disbursing and Escrow Agreement dated as of March 25, 2024 made among the Project Participants and the undersigned with respect to the Project, and the Advances (as defined in such Disbursing Agreement).

The undersigned does hereby request and authorize payment totaling $___________ as described and itemized on Schedule A, attached, and does hereby certify that all amounts requested for labor and/or material are physically incorporated into the Project (except for "stored" items or downpayments for ordered items shown on Schedule A), in compliance with the plans and specifications, or for services truly performed relating to the subject property and otherwise complying with the requirements for disbursement as set forth in the Disbursing Agreement . All such payment requests, individually and in total are in accordance with the terms of the executed loan documents and represent amounts actually due and payable.

The undersigned further certifies that no part of the payments requested include or contemplate rebates, commission or Loan to the undersigned, their beneficiaries, agents or assigns, and that all amounts requested are solely for the named payees and for the purpose indicated.

Each disbursement to the payees listed hereunder shall constitute a representation and warranty by the undersigned, as of the date that such disbursement is made, that the conditions to disbursement contained in the Disbursing Agreement and any other agreement between the undersigned and any Project Participant have been satisfied.

The undersigned further certifies that that all amounts requested from the PACE Advance are solely for costs related to PACE Improvements pursuant to the PACE Scope of Work in accordance with the Plans;

The undersigned confirms and requests that the total payment requested shall be made from the following sources, per the Disbursing Agreement:

1. Investor Contribution $__________
2. CRA Advance $___________________
3. PACE Advance $_____________________
4. Bridge Loan Advance $_________________
5. Construction Loan Advance $______________________ .

GULFSTREAM OWNER, LLC

By:______________________________

Exhibit C
Forms of Conditional Lien Waiver and Final Lien Waiver

TO BE PROVIDED BY TITLE COMPANY

Exhibit D
Form of Notice of Commencement





After recording return to:

Michelle DeRosa, Esq.
Kapp Morrison, LLP
7900 Glades Road, Suite 550
Boca Raton, FL 33434

## NOTICE OF COMMENCEMENT

The undersigned hereby gives notice that improvement will be made to certain real property, and in accordance with Chapter 713, Florida Statutes, the following information is provided in this Notice of Commencement.

1. **DESCRIPTION OF PROPERTY** (Legal description of the property & street address, if available) **TAX FOLIO NO.:** 38-43-44-27-74-001-0000

SUBDIVISION ____ BLOCK ____ TRACT ____ LOT ____ BLDG ____ UNIT ____

**Please see Exhibit A attached hereto.**

2. **GENERAL DESCRIPTION OF IMPROVEMENT: Demolition/Construction**

3. **OWNER INFORMATION OR LESSEE INFORMATION IF THE LESSEE CONTRACTED FOR THE IMPROVEMENT:**

a. Name and address: Gulfstream Owner, LLC, a Delaware limited liability company f/k/a HH Gulfstream Land Holdings, LLC
4240 Manchester Avenue, St. Loius Missouri 63110

b. Interest in property: Fee Simple Owner

c. Name and address of fee simple titleholder (if different from Owner listed above): N/A

4. a. **CONTRACTOR'S NAME:** Hogan Brothers Construction International Corp.

Contractor's address: 18851 NE 29th Ave., Suite 413, Aventura, FL 33180
matthewh@hoganbrothers.net

b. Phone number: 305-360-0011

5. **SURETY** (if applicable, a copy of the payment bond is attached): N/A

a. Name and address: N/A

b. Phone number: N/A

c. Amount of bond: N/A

6. a. **LENDER'S NAME:** South Florida Financing II, LLC, a Florida limited liability company

Lender's address: 109 SE 9th Avenue, 2nd Floor, Delray Beach, FL 33483

b. Phone number: 561-278-1169

7. Persons within the State of Florida designated by Owner upon whom notices or other documents may be served as provided by Section 713.13(1)(a)7., Florida Statutes:

a. Name and address: N/A

b. Phone numbers of designated persons:

8.a. In addition to himself or herself, Owner designates the following persons to receive a copy of the Lienor's Notice as provided in Section 713.12(1)(b), Florida Statutes.
N/A

b. Phone number of person or entity designated by Owner: ______________________

9. Expiration date of notice of commencement (the expiration date will be 1 year from the date of recording unless a different date is specified): ______________________

WARNING TO OWNER: ANY PAYMENTS MADE BY THE OWNER AFTER THE EXPIRATION OF THE NOTICE OF COMMENCEMENT ARE CONSIDERED IMPROPER PAYMENTS UNDER CHAPTER 713, PART I, SECTION 713.13, FLORIDA STATUTES, AND CAN RESULT IN YOUR PAYING TWICE FOR IMPROVEMENTS TO YOUR PROPERTY. A NOTICE OF COMMENCEMENT MUST BE RECORDED AND POSTED ON THE JOB SITE BEFORE THE FIRST INSPECTION. IF YOU INTEND TO OBTAIN FINANCING, CONSULT WITH YOUR LENDER OR AN ATTORNEY BEFORE COMMENCING WORK OR RECORDING YOUR NOTICE OF COMMENCEMENT.

OWNER:
Gulfstream Owner, LLC, a Delaware limited liability company
f/k/a HH Gulfstream Land Holdings, LLC, a Delaware limited liability company

By: ______________________________
Amrit Bir Singh Gill, Trustee of the Aminell Anne Harris Gill and Amrit Bir Singh Gill Joint Revocable Trust u/t/a dated December 1, 2004, as amended, Managing Member of Gulfstream Owner, LLC

By: ______________________________
Aminell Anne Harris Gill, Trustee of the Aminell Anne Harris Gill and Amrit Bir Singh Gill Joint Revocable Trust u/t/a dated December 1, 2004, as amended, Managing Member of Gulfstream Owner, LLC

STATE OF MISSOURI )
) SS
CITY OF ST. LOUIS )

On this __________ day of March 2024, before me appeared Aminell Anne Harris Gill and Amrit Bir Singh Gill, to me personally known, who, being by me duly sworn, did say that they are the Trustees of the Aminell Anne Harris Gill and Amrit Bir Singh Gill Joint Revocable Trust u/t/a dated December 1, 2004, as amended, Managing Member of Gulfstream Owner, LLC, a Delaware limited liability company and that said instrument was signed in behalf of said trust and limited liability company and said Aminell Anne Harris Gill and Amrit Bir Singh Gill, acknowledged said instrument to be the free act and deed of said trust and limited liability company.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the City and State aforesaid, the day and year first above written.

______________________________
Notary Public

My commission expires:

Exhibit E
PACE PROJECT SCOPE OF WORK

PACE Equity

## APPENDIX B: PACE EQUITY SCOPE OF WORK

This scope of work listed below will be included in the various assessment agreements and program application. All the measures below are eligible measures with their respective costs.

### PACE Scope of Work (Summary)

| | Eligible Spend | PACE Scope | Useful Life |
|---|---|---|---|
| Appliances | $ - | $ - | - |
| Building Envelope | $ 3,775,185 | $ 3,514,758 | 36.0 |
| Electrical/Lighting | $ 1,527,541 | $ 1,422,165 | 34.8 |
| Elevator | $ 465,655 | $ - | - |
| Energy Efficiency Other | $ - | $ - | - |
| HVAC | $ 2,091,637 | $ 1,947,348 | 27.5 |
| Plumbing | $ 751,633 | $ 699,782 | 35.4 |
| Renewable Energy | $ - | $ - | - |
| Seismic/Resiliency | $ - | $ - | - |
| Soft Costs | $ 3,669,053 | $ 3,415,948 | n/a |
| Total | $ 12,280,703 | $11,000,000 | 34 |

Per the table above and Palm Beach County requirements; the maximum project of eligible measures is $12,280,703 of PACE financing over 30 years. In terms of actual PACE Scope financing, $11,000,000 of Direct Construction Costs was determined between PACE Equity and RSL Inc.

**Schedule 1** to Construction Disbursing and Escrow Agreement

CONDITIONS PRECEDENT TO ANY DISBURSEMENT

*(all capitalized terms in this Schedule 1 that are undefined in the Disbursing Agreement shall have the meaning given to them in the applicable Loan Agreement)*

(i) All representations and warranties contained in the Loan s Agreements and in the other Loan Documents shall be true in all material respects on and as of the date of such Advance, except (i) to the extent any such representation or warranty by its nature can only be made as of a specified date, in which case such representation or warranty shall have been true and correct on and as of such specified date, or (ii) to the extent any such representation or and warranty has changed and such change (A) has been disclosed in writing to Lender, (B) has not caused and will

not cause a Material Adverse Occurrence to Lender, and (C) is attributable to matters first occurring after the Loan Opening Date.

(ii) Owner shall have performed all of its obligations under all Loan Documents which are required to be performed on or prior to the date of such Advance, including (unless expressly waived in writing by Lender) the delivery of any documents or other items waived in connection with the Loan Opening Date.

(iii) Both before and after giving effect to the Advance, the Loan is In Balance.

(iv) The priority of disbursements from the PACE Loan, CRA Advance, Investor Contribution and Bridge Loan stated in the Disbursing Agreement are followed;

(v) There shall have been no Material Adverse Occurrence to Lender since the Loan Opening Date, as reasonably determined by Lender, or if a Material Adverse Occurrence to Lender has occurred, Owner and/or Guarantor shall have taken such actions as may have been determined by Lender to have been sufficient to mitigate the impact thereof.

(vi) No material Event of Default under the Loan Agreement shall have occurred and be continuing that has not been waived in writing by Lender.

(vii) No litigation or proceedings are pending or threatened (including proceedings under Title 11 of the United States Code) against Owner, any Guarantor, or the Project, which litigation or proceedings, in the reasonable judgment of Lender, could constitute a Material Adverse Occurrence to Construction Lender. (the foregoing does not apply to litigation or proceedings arising from the actions of Lender, Seller, or the Affiliates of either of them).

(viii) Owner shall have delivered to Lender:

(a) Request for Disbursement meeting the requirements of the Disbursing Agreement. Prior to each Disbursement of funds (not more than one time in each calendar month), Disbursing Agent, Title Company, Lenders shall be furnished the following:

(b) An unconditional lien waiver (or a lien waiver conditioned only upon payment and clearance of funds /receipt of good funds received) for all sums to be disbursed to the General Contractor in this particular Request for Disbursement and unconditional lien waivers (or lien waivers conditioned only upon good funds received) for all sums disbursed to General Contractor, its subcontractors and all materialmen (of every tier) in the prior Disbursement of funds at least three (3) weeks prior to this request. Unconditional Lien Waivers for each Reqeust for Disbursement will be provided seven-(7) days after payment and clearance of funds /receipt of good funds have occurred. The form attached to this Disbursing Agreement as Exhibit C is an acceptable form for such lien waivers; provided that Disbursing Agent may, with the General Contractor's consent, use alternate forms containing substantially similar provisions. Each such lien waiver, whether partial or final, must set forth that all lien rights are waived with respect to the total amount disbursed up to and including the last date upon which labor or material was supplied and for which payment is being made.

c) Certification of Recording Architect, pursuant to signature on an AIA G 702 summary sheet (or its equivalent), with an AIA G 703 detail sheet (or its equivalent) prepared for the Project, certifying that the materials, supplies and labor incorporated in the Project are in a

percentage consistent with the General Contractor's application to Owner for payment and that such request is in balance.

d) Statements, waivers, affidavits, supporting waivers, invoices, schedules of values and releases relating to mechanics' liens, reasonable and satisfactory to Disbursing Agent, Title Company, Lender, and Owner. The parties acknowledge that Disbursing Agent's responsibility for collecting lien waivers does not relieve Owner and General Contractor of responsibility for notifying Disbursing Agent of the identity of any supplier or subcontractor that may have lien rights and from whom Disbursing Agent may require lien waivers. General Contractor remains ultimately responsible for assuring that subcontractors pay for all materials and services incorporated into the Project under the Construction Contract, to the extent funds have been disbursed hereunder for such amounts. Such ultimate responsibility on the part of the General Contractor shall not relieve Disbursing Agent from any liability to Lender hereunder.

e) A current lien waiver executed by General Contractor conditioned only upon payment and clearance of funds /receipt of good funds of the then current draw request. . Unconditional Lien Waivers for each Request for Disbursement will be provided seven-(7) days after payment and clearance of funds /receipt of good funds have occurred.

(ix) Except for Unavoidable Delays or changes to the Construction Schedule, no event, circumstance or condition exists or has occurred which, in Lender's reasonable judgment, is substantially likely to delay or prevent the Completion by the Completion Date, or if any such event, circumstance or condition has occurred, Owner shall have provided, to the reasonable satisfaction of Lender, a plan and adjusted schedule with respect to the Work reflecting the actions proposed to be taken by Owner in order to cause Completion by the Completion Date.

(x) Upon the disbursement of the Loan Advance, an endorsement to the Title Policy shall be issued by the Title Company ( a copy of which shall be delivered to PACE Lender), increasing the amount of coverage thereunder to the Principal Balance (taking into account the then current Loan Advance), and insuring the lien of the Mortgage to be superior to all exceptions to title other than the Permitted Exceptions and any other exceptions hereafter approved by Lender in writing. No Loan Advance shall be disbursed by Title Company until it is committed under the Disbursing Agreement to furnish Lender with a construction update endorsement for such advance.

(xi) If such Loan Advance is to be made in whole or in part for materials purchased by Borrower but not yet installed or incorporated into the Project, (i) Lender shall have approved such purchase which approval shall not be unreasonably withheld, (ii) Lender shall be reasonably satisfied with the conditions under which such materials are purchased and stored, (iii) the materials involved shall have been delivered to the Land and/or stored on the adjacent contiguous vacant parcel referred to as the "Gulfstream Expansion Parcel " and described in Exhibit A-2 of the PSA or in offsite locations so long as the site is accessible to Consultant, with evidence of security and insurance in accordance with the obligations for insurance under this Agreement, both during storage and transit and suitable storage, (iv) a copy of a bill of sale or other evidence of title in Owner, together with a copy of UCC searches against Owner and the warehouseman, if applicable, indicating no liens or claims which may affect such materials shall have been delivered to Lender and (v) Owner shall

have provided Lender, any architect and any applicable governmental agency or testing authority having jurisdiction over the Project with access to inspect, test or otherwise examine such stored and unincorporated materials. Notwithstanding the foregoing, Loan Advances may also be made for downpayments on materials before those materials are delivered to the Project or storage, provided that i) the applicable materials are included in the approved Budget, and ii) the amount of the downpayment is not more than 50% of the Budget amount for such materials (including permitted applications of contingencies).

(xii) Owner has made available to Consultant (i) copies of all Material Subcontracts,;

(xiii) Owner has delivered to Lender the certificates of insurance and the policies of insurance required by Exhibit I to be delivered on or prior to the first Loan Advance;

(xiv) Owner has made available to Consultant the Plans and Specifications for all Work for which the Loan Advance is requested;

(xv) Owner has delivered the Construction Schedule to Lender;

(xvi) A Notice of Commencement, in the form attached to the Construction Loan Agreement has been recorded and posted on the Property, as required by Chapter 713, Florida Statutes.

**Schedule 2** to Construction Disbursing and Escrow Agreement

CONDITIONS PRECEDENT TO FINAL DISBURSEMENT

The Final Loan Advance shall be made upon satisfaction of the following conditions in addition to satisfaction of the other conditions set forth in Schedule 1:

*Part 1*

*(all capitalized terms in this Part 1 to Schedule 1 that are undefined in the Disbursing Agreement shall have the meaning given to them in the applicable Loan Agreement)*

Owner has delivered to Lender (A) a certificate in writing signed by a duly authorized officer of the Contractor certifying that all obligations of the Contractor under the Contract and all obligations of the Subcontractors under the Subcontracts have been fully performed, subject only to Punch List Items, and (B) a certificate signed by the Architect, if applicable, certifying that the construction of the Work has been completed in all respects substantially in accordance with the Plans and Specifications;

Owner has delivered (or caused to be delivered) to Lender certificates of fire and extended coverage insurance as herein required (or, if requested by Lender, copies of such policies), in form and substance reasonably satisfactory to Lender, with Lender named as mortgagee and as an additional insured party and loss payee;

The Title Company is unconditionally prepared to issue its final endorsement to the Title Policy covering the Principal Balance of the Loan, subject only to the Permitted Exceptions and other exceptions approved by Lender in writing, and including full coverage against all construction liens and such other endorsements as are required by Lender;

Owner has delivered to the Title Company and Lender final and unconditional waivers of lien from the Contractor and all Subcontractors and materialmen who have supplied labor or material in connection with the Work and who have not previously submitted such final waivers;

Owner has delivered to Lender a copy of the "Authority to Open Letter delivered by Hotel Franchisor confirming that Hotel Franchisor has accepted the construction of the Improvements to satisfy the requirements of the Hotel Franchise Agreement so as to allow the immediate operation of the Improvements as a Marriott franchised hotel.

**Part II.** All capitalized but undefined terms in this Part II to Schedule 2 shall have the meaning given to them in the PACE Financing Agreement.

D. Conditions to Final Disbursement. Any portion of a Request for Disbursement that contains final Direct Costs shall only be funded upon the fulfillment of the following conditions:

i. PACE Lender has received a final unconditional certificate of occupancy for each space/unit (provided, if any retail spaces have not yet been leased, then certificates of occupancy for such retail spaces shall be limited to the shell build);

ii. Owner shall have provided to PACE Lender certificates of property insurance, business interruption, or any other additional insurance required by the PACE Loan Documents, if different from the policies in effect during the construction period;

iii. PACE Lender has received a Certificate of Substantial Completion on AIA Form G704, signed by Owner, the Architect, and General Contractor together with a certification that any necessary permits have been obtained;

iv. PACE Lender has received verification that the PACE Improvements (as defined in Schedule 1, above) have been installed; and

v. PACE Lender has received such other information and documentation as it reasonably requests.

Each release of PACE Loan funds will be without any cost to PACE Lender, and Owner shall pay all costs associated with each such release, including, without limitation, any costs imposed by Project Inspector for the Inspector Reports and/or PACE Lender's reliance on any such Inspector Reports